86 N.Y.2d 92 (1995)
653 N.E.2d 1168
629 N.Y.S.2d 998
The People of the State of New York, Respondent,
v.
Zenel Seit, Appellant.
Court of Appeals of the State of New York.
Argued June 8, 1995.
Decided July 6, 1995.
Steven R. Kartagener, New York City, and David J. Mudd for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Gary Fidel and Steven J. Chananie of counsel), for respondent.
Chief Judge KAYE and Judges TITONE, SMITH, LEVINE and CIPARICK concur with Judge SIMONS; Judge BELLACOSA dissents and votes to reverse in a separate opinion.
*95 SIMONS, J.
Defendant has been convicted of murder in the second degree for killing Thomas Gonzales. Gonzales, a tenant of defendant, went to defendant's apartment to get a receipt for past rent paid so that he could show it to the Marshal and thereby avoid eviction. Defendant refused to give Gonzales the receipt at that time and an argument ensued which resulted in defendant shooting him.
The altercation took place in front of the apartment house in which defendant lived. According to the testimony of decedent's nephew and his friend and two neighborhood youths who witnessed the incident, defendant, while standing on the stoop, shot decedent in the face with a .25 calibre pistol while decedent stood below him on the sidewalk. Decedent fell forward to the ground and defendant then walked down the steps and, while decedent was on the ground, shot him in the back three times in quick succession. Powder burns indicated that two of the bullets in decedent's back were fired from a distance of 1 to 2 feet away.
Originally, defendant told the police that Gonzales had a gun and that he was accidentally shot as defendant tried to wrestle it away from him. At the trial, however, defendant admitted that story was false and he, his son, his daughter-in-law and his daughter testified that decedent was killed by defendant's gun, but that defendant acted in self-defense.
The only issue preserved for our review on this appeal is whether the court erred in refusing to permit defense counsel to introduce evidence of the substance of the son's 911 call to the police under the recent fabrication exception to the hearsay rule. We conclude that the ruling was error but that the error was harmless.[1]
Generally, the testimony of a witness may not be corroborated or bolstered by evidence of prior consistent statements. One reason, as we said in People v McClean (69 N.Y.2d 426, 428), is that untrustworthy statements do not become more trustworthy merely by repetition. The rule also rests upon the *96 belief that sworn testimony is preferable to extrajudicial statements and that litigation should not devolve into a contest to see who can obtain the latest version of a witness' story (see, People v McDaniel, 81 N.Y.2d 10, 16). There is an exception, however, when a witness' testimony is attacked on cross-examination, directly or by inference, as a recent fabrication (see, People v Davis, 44 N.Y.2d 269, 277). Of course, not all inconsistencies developed on cross-examination imply that a witness' testimony is fabricated. Questions designed to demonstrate that the testimony is the product of confusion or mistake do not charge fabrication (see, People v Singer, 300 N.Y. 120, 124). The implication that the testimony was recently fabricated arises only if it appears that the cross-examiner believes and wants the jury to believe that the witness is testifying falsely to "meet the exigencies of the case" (People v Katz, 209 N.Y. 311, 340; see also, People v Singer, supra). When the witness' testimony has been attacked for that purpose, the witness may be permitted to show that he or she made similar statements at some earlier time when free from the alleged bias. The prior consistent statements antedating the motive to fabricate are not introduced to prove or disprove the facts in issue, but to rehabilitate the credibility of the witness (see, People v McClean, supra; People v Katz, 209 NY, at 341, supra).
Here, the question is whether the prosecutor's cross-examination of defendant's son, Uli, implied that Uli's testimony about decedent's possession of the gun was recently fabricated. Uli testified that on at least three occasions during the argument decedent reached behind his back for something at his waist. On its face, the prosecutor's examination appeared to challenge Uli's assertion that he and his father reasonably believed the decedent intended to use unlawful physical force against them (see, People v Goetz, 68 N.Y.2d 96). The line of questioning, however, tended to establish that Uli did not believe that the decedent possessed a gun at the time and that his testimony at trial was a fabrication. There was no suggestion that this testimony was inaccurate because, for example, Uli was unable to see clearly or that he was confused by the excitement of the moment. Thus, whatever the primary purpose of the question, the cross-examination created the inference that Uli's testimony was fabricated sometime after the incident to establish defendant's justification defense. A reasonable application of the recent fabrication exception to the hearsay rule permitted rehabilitation of Uli's *97 credibility under these circumstances and evidence of his 911 conversation should have been admitted.
The error was harmless, however, because other witnesses testified that Uli had called 911 during defendant's confrontation with the decedent and the substance of Uli's call was established by the testimony of his wife, who testified that she overheard Uli reporting that decedent had a gun.[2] Thus, the record contains evidence of Uli's 911 conversation dispelling the implication that his testimony was recently fabricated. Moreover, insofar as Uli's belief that the decedent possessed a gun was offered to establish the defense of justification, the other members of defendant's family testified that they, too, believed that the decedent possessed a gun and their evidence was more than sufficient to establish the claim, if the jury chose to accept it, even without Uli's testimony.[3]
Even if defendant is credited with having established these facts, however, the uncontroverted evidence showed that at some time after Uli called 911, decedent walked to his van, parked some 40 feet away from the stoop, took off his jacket and left it there. At that point, defendant and his family had the opportunity to leave the stoop and retreat into their apartments. Defendant's actions in failing to do so and in waiting for decedent to return to the area of the stoop to renew the argument when he had the opportunity to safely retreat, defeat any claim of justification (see, Penal Law § 35.15 [2]; see also, People v Brown, 187 AD2d 312; People v Childs, 21 AD2d 809, 810). The dissent fails to address this or the uncontroverted evidence that defendant shot the decedent in the back three times after decedent returned to the stoop from his van. Given those circumstances, however, the majority conclude there is no significant probability that the jury would have acquitted defendant if evidence of the 911 conversation had been admitted to rehabilitate Uli's credibility on redirect (see, People v Crimmins, 36 N.Y.2d 230, 242).
*98 Finally, although defendant has made no formal claim that he was denied a fair trial, his counsel has made charges of prosecutorial misconduct which were accepted by the dissenter at the Appellate Division and are accepted by the dissenter in this Court. His arguments warrant some comment here. The thrust of the different dissenters' position is that the prosecutor knowingly misled the trial court by stating that the 911 tape had not been introduced in the first trial of this indictment, which resulted in a hung jury, when he knew it had been admitted, and thereafter took advantage of the court's ruling and the absence of the tape when examining the witnesses and during summation.[4] We are not able to conclude from this record that that interpretation of the record is warranted.
Counsel points particularly to a statement made by the prosecutor when defense counsel moved to introduce the tape to rehabilitate Uli following the prosecutor's cross-examination. The court asked both counsel if the tape had been admitted at the first trial. The prosecutor answered, "I don't think so", adding "but [the lawyer who represented defendant at the first trial] is a very clever lawyer." It should be noted that the statement was made after the court had ruled the tape inadmissible and that it was made to the same Judge who presided at the earlier trial. The prosecutor apparently had no clearer recollection of the evidence at the first trial than the Judge did. Moreover, the prosecutor first raised a question about the tape, prior to jury selection. While objecting to the possibility of defendant offering the tape, he stated that he was uncertain whether the evidence regarding the tape had been received at the first trial and recalled only a dispute with prior defense counsel about his failure to submit the tape to the Grand Jury. Apparently no one was sufficiently interested at that time to check the record of the earlier trial.
The matter came up again when the tape was offered, but not received, during Uli's direct testimony (see, n 1, ante). Following the cross-examination, defense counsel again offered the tape, stating it had been received at the first trial. The court denied the offer, noting that the contents of the tape had *99 been established through another witness. After it had ruled, the court continued the discussion and it was then that the statements of the prosecutor, now objected to, were made. We find nothing in this record to establish that the prosecutor intended to mislead the court or take advantage of its ruling.
During summation, defense counsel argued that decedent had a gun during the altercation although no one had ever seen a gun in decedent's possession and no gun had ever been found.[5] Counsel proposed several explanations, none supported by the evidence, to explain the failure of the police to find the weapon the witnesses claimed decedent possessed. In response, the prosecutor argued that no one had seen a gun in decedent's hands and urged that defendant did not really believe decedent was armed. His comments, fair response to defense counsel's summation, were not objected to and would not warrant reversal in any case.
Accordingly, the order of the Appellate Division should be affirmed.
BELLACOSA, J. (dissenting).
I agree that the trial court erred by excluding testimonial evidence from the defendant's son concerning the 911 emergency call. Because I am unable, however, to agree that the error was harmless, I respectfully dissent and vote to reverse and order a new trial.
Potentially independent verification and corroboration of defendant's justification defense focused on the 911 telephone call that would have been adduced through the testimony of his son, Uli, who made the call from inside defendant's house as the fatal altercation was unfolding in front of the house. When the 911 testimony was admitted at defendant's first trial, the jury was unable to reach a verdict on the murder charge. Thus, a "significant probability" exists that the court's exclusion of the evidence in the second trial contributed to the second jury convicting defendant (see, People v Crimmins, 36 N.Y.2d 230, 242). This error should not be deemed harmless to rescue this conviction, particularly in light of the prosecutor's heavy reliance in summation on the absence of a gun found on the victim.
At defendant's first murder trial, his son, Uli, testified: "I told the [911] operator [that] there [was] an emergency here. I said there is somebody with a gun. * * * There are people *100 here. They got guns and there is going to be a problem." At the second trial, the prosecutor objected to Uli's 911 testimony, asserting falsely that the 911 tape was excluded as hearsay in the first trial. The trial court relied on this misrepresentation in making its concededly erroneous ruling excluding the evidence. Although other members of defendant's family testified at both trials that they believed the victim possessed a gun, the 911 testimony and tape served as the objective linchpin to buttress defendant's justification defense. It surely could have provided the basis for a reasonable doubt of guilt and, thus, cannot be deemed harmless.
Moreover, the Court has in a series of recent cases rejected harmless error involving relatively less substantial or pinpointed errors (see, e.g., People v Taylor, 80 N.Y.2d 1, 11 [erroneous admittance of phone message]; People v Johnson, 80 N.Y.2d 798, 799 [erroneous admittance of lineup identification]; People v Vasquez, 76 N.Y.2d 722, 725 [denial of providing missing witness charge]; People v Newball, 76 N.Y.2d 587, 592 [erroneous admission of prior identification testimony]). Where, as here, the defendant is subjected to two trials leading to arguably inconsistent verdicts and a key piece of exculpatory evidence is concededly and erroneously excluded from the trial at issue, it defies logic and practical application of the harmless error doctrine to declare that the combined error of the trial court, directly contributed to by the trial prosecutor, did not have a significant probability of effect on the ultimate verdict. In my view of the record, more than just a "significant probability" existed in this case that the error contributed to the jury's guilty verdict in the second trial (People v Crimmins, 36 N.Y.2d 230, 242, supra). Thus, there should be a new trial.
Order affirmed.
NOTES
[1] Defendant argues in this Court that he was entitled to introduce the 911 tape on the direct examination of defendant's son to establish, circumstantially, defendant's state of mind. That argument was not raised below. In the trial court he sought to introduce the tape to show the son's state of mind and the court ruled, correctly, the son's perception of the circumstances was irrelevant.
[2] The tape indicates that Uli said "somebody" had a gun. It is not entirely clear that "somebody" referred to decedent. Uli testified that he knew his father always carried a gun but claimed at trial it did not "register" in his mind that his father had a gun that evening.
[3] The dissent's contention that the failure to receive testimony about the 911 tape in the second trial caused defendant's conviction is based on no more than speculation. The record of the first trial is not before us and thus, we have no way of comparing the evidence in that prosecution, which resulted in a hung jury, and the evidence in this trial, which resulted in a verdict of guilty.
[4] The accusation rests upon defense counsel's belief that the tape proved decedent had a gun. Manifestly, the tape proved no such thing (see, n 2, ante). It added nothing to the evidence of others but merely bolstered Uli's credibility.
[5] Defendant's son had disposed of defendant's gun before the police arrived and it was never found.