■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK A. BURT, Appellant. [668 NYS2d 413] —Spain, J. Appeal from judgment of the County Court of Saratoga County (Eidens, J.), rendered May 21, 1996, upon a verdict convicting defendant of the crimes of grand larceny in the third degree, petit larceny (two counts), offering a false instrument for filing in the first degree (two counts), offering a false instrument for filing in the second degree, falsifying business records in the first degree (two counts) and falsifying business records in the second degree.

In 1993, the Town of Moreau in Saratoga County was under orders from the Department of Environmental Conservation to close and cap its landfill. Defendant, owner of Burt's Tree Service, was hired by the Town to haul sand to cover the landfill at a rate of $30 per hour. Originally, defendant was hauling sand from a bank at the landfill; as the supply ran low, however, the Town found a free alternate source at a quarry owned by Glens Falls Cement Company (hereinafter the cement company). The agreement between the Town and the cement company to remove the sand and clay, which covered the limestone used in making cement, was oral and made through Michael Sullivan, the Town supervisor. This agreement required that the Town remove equal amounts of sand and clay so as to expose the limestone; because the Town needed only the sand, the cement company eventually provided a location at the quarry for the Town to dump the clay.

In 1994 the Town, seeking to more closely monitor the expense of closing the landfill, put out to bid a contract for loading and hauling sand to the landfill at a unit price per ton; defendant won the bid with a price of $1.49 per ton. According to the agreement, defendant was required to bring the trucks loaded with sand across the landfill scale to insure an accurate measurement of tonnage. Proper payment through a certified voucher system was assured because payment by the Town

would be made based upon the total number of tons recorded on the scale.

As the result of an investigation into discrepancies between the amount of tonnage set forth on vouchers submitted to the Town for payment and records from the landfill scale, defendant was indicted on 15 separate counts relating to allegations of falsified vouchers. The defense alleged that the discrepancies in the amount of tonnage which crossed the scale and the vouchers submitted for payment were the result of changes made to the vouchers by Sullivan who added additional tonnage to compensate defendant for truck loads delivered but not recorded on the scale, as well as for extra work that was done but not specifically covered under the contract. The sums for the alleged extra work were calculated pursuant to a formula devised by Sullivan and paid according to the unit price of the contract.

Defendant was found guilty after a jury trial of grand larceny in the third degree, two counts of petit larceny, two counts of offering a false instrument for filing in the first degree, offering a false instrument for filing in the second degree, two counts of falsifying business records in the first degree, and falsifying business records in the second degree. Defendant was sentenced to an indeterminate prison term of 2⅓ to 7 years on the grand larceny count, 1⅓ to 4 years for both the falsifying documents in the first degree and the falsification of business records in the first degree counts, and definite one-year terms for the remaining counts; all sentences were to run concurrently. County Court also directed that defendant pay restitution in the total sum of $21,062.20 plus a 5% surcharge pursuant to Penal Law § 60.27 (8). Defendant filed a motion pursuant to CPL 440.10 to vacate the verdict of the jury and demanded a new trial; County Court denied the motion without a hearing. Defendant appeals.

Defendant's assertion that the proof was insufficient to support the jury's verdict is without merit. Defendant was under contract with the Town to load and haul sand. Each voucher was certified by defendant and compared to the computer printout from the landfill scale readings before payment. The vouchers were approved by landfill supervisors and in one instance by Sullivan. On several vouchers, additional amounts were added. Contradictory testimony was heard regarding whether additional work was actually performed by defendant and whether any deliveries were made which were not reflected on the scale records. The conflicting testimony concerned, *inter alia,* whether it was possible to avoid the scale when entering

the landfill, whether berms were created by defendant at the cement company, whether after-hours work was done by defendant, whether defendant removed trees and overburden to extract the sand and whether defendant constructed roads for the purpose of accessing different areas of the cement company property to extract sand. Upon our review of the evidence in the record we conclude that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d 490, 495; *see, People v Carey*, 241 AD2d 748, *lv denied* 90 NY2d 1010).

The record amply supports the conclusion that, after making credibility determinations, the jury could find that defendant knew that the information represented on the vouchers he signed was false, that he intended to give the vouchers to the Town for payment, that he knew the instruments would be filed, that he intended to defraud the Town and that he intended to steal in excess of $21,000 from the Town (*see*, Penal Law §§ 175.35, 175.10, 155.25, 155.35). Even though defendant's contention that the changes were made by Sullivan is supported in the record, the record also reveals that, despite his limited reading and writing skills, defendant was aware that the vouchers were being changed and that he was being paid greater sums than those he originally submitted on the vouchers in question. After viewing the evidence in the light most favorable to the People, it is our conclusion that the jury could reach its verdict beyond a reasonable doubt and to a moral certainty in the face of the contradictory evidence; accordingly, the verdict should not be disturbed (*see, People v Contes*, 60 NY2d 620, 621; *People v Rosado*, 244 AD2d 772). We also conclude that, based on the nonhearsay evidence presented to the jury, the verdict was not against the weight of the evidence (*see, People v Bleakley, supra*, at 495).

Next, although there is some merit to defendant's assertion that he was prejudiced by the extensive hearsay content of the testimony of State Police Investigator Robert Stedman, it is our view that any prejudice was minimal. Stedman was one of the first of 24 witnesses called by the People in its case-in-chief; he testified freely to what he had learned in the course of his investigation during which he interviewed upwards of 30 people and reviewed many documents. At numerous times during the course of his testimony Stedman used phrases like "I learned that", "I received information that", "I determined * * * that" and "I was aware that" to introduce information he had obtained from others which was pure hearsay. Although

the defense made some objections on hearsay grounds, each of which was sustained, the remainder of Stedman's over-all testimony was still replete with hearsay and conclusions he arrived at which were not based upon his personal knowledge. Notably, in his cross-examination of Stedman, defense counsel challenged a number of his conclusions, pointing out that these conclusions had been drawn from photographs, documents and interviews, and were not based upon Stedman's personal knowledge. Defense counsel also used Stedman to read portions of documents into the record in support of the defense.

In our view, while Stedman's testimony may have bolstered the testimony of other witnesses, any error was harmless in light of the hearsay objections, the cross-examination of Stedman and the fact that almost every person interviewed and quoted by Stedman was called as a witness by the People and subjected to cross-examination by the defense. Any chance that the jurors may have given undue weight to Stedman's hearsay is belied by the fact that the defense had the opportunity to hear the key declarants give direct testimony under oath and to cross-examine each of them. Although it is improper to bolster the testimony of another witness (see, People v Seit, 86 NY2d 92, 95), here it is significant that Stedman's testimony preceded the testimony of all but one of the many witnesses he quoted.

We next reject defendant's contention that he did not receive a fair trial because County Court permitted defense witness Sullivan to be cross-examined regarding other matters for which Sullivan had been charged. Sullivan was called to testify on behalf of defendant. Prior to Sullivan's testimony, County Court heard arguments regarding Sullivan's expected testimony and two collateral matters upon which defense counsel wished to prohibit cross-examination. Defendant was concerned because Sullivan had been indicted on charges pertaining to two other matters involving the Town and falsified vouchers and, though willing to testify for defendant, Sullivan was unwilling to testify with respect to at least one of these other matters. It was evident that if such questioning arose, Sullivan would invoke the 5th Amendment and refuse to answer questions, which would then raise questions regarding how the jury was to be instructed as to his credibility and the weight of his testimony. County Court determined that it would be appropriate to wait and listen to the questions asked and the answers given before making a determination.

Despite County Court's unwillingness to give the defense any assurances regarding the cross-examination of Sullivan,

the defense proceeded to call Sullivan who testified not only about the charges against defendant, but also with respect to one of the other matters. Upon further questioning during cross-examination, Sullivan invoked his 5th Amendment rights in response to questions regarding the second collateral matter. County Court, at the request of the People, then instructed the jury that because the questions Sullivan refused to answer raised credibility issues, they could consider his refusal to testify in determining his credibility as a witness and the weight to be given to his testimony. Defendant was particularly concerned with Sullivan's testimony because it was defendant's contention that the sole culpable party was Sullivan, as he was the person who changed the vouchers. However, it should be noted that in signing the vouchers defendant certified, *inter alia*, that all information therein was true and correct. In our view, the scope of the People's cross-examination was not beyond the discretion of the trial court to allow. Defendant's decision to call Sullivan despite his awareness of the risks involved leads us to conclude that County Court's ruling and limiting instruction did not deprive defendant of a fair trial.

We next conclude that County Court's denial of defendant's motion to vacate pursuant to CPL 440.10 without a hearing was proper. Notably, the CPL 440.10 motion was premature because it was made after the jury's verdict but before sentencing; County Court's denial of the motion also occurred before sentencing. The proper timing for such a motion is upon the completion of the judgment, which does not occur "until [the] sentence is imposed and entered" (*People v Burdash*, 102 AD2d 948, 949). We also note that defendant never sought the permission of this Court to appeal the denial of his CPL 440.10 motion (*see, People v Cooper*, 154 AD2d 612; *see also*, CPL 450.15 [1]). However, in the interest of justice and judicial economy, we will overlook each of these irregularities (*see, People v Vecchio*, 228 AD2d 820) and consider defendant's assertions.

A motion pursuant to CPL 440.10 is addressed to the discretion of the trial court (*see, People v Bryce*, 88 NY2d 124, 128). Conclusory or speculative allegations do not warrant a hearing (*see, id.*, at 128; *People v Brown*, 56 NY2d 242, 246-247). However, in order to insure that a defendant has a fair trial, he or she does have a right to *Brady* material (*see, Brady v Maryland*, 373 US 83) which may serve to exculpate the defendant (*see, People v Bryce, supra*, at 128-129).

Here, defendant alleged that he had obtained additional information and proof that trucks were entering the landfill

without crossing the scale which was consistent with his argument accounting for the discrepancy between the vouchers and scale receipts. Defendant also alleged that had such information been available, which would have contradicted a number of the prosecution's witnesses, the verdict would likely have been more favorable to him. Additionally, defendant alleged that the prosecution failed to notify defendant after becoming aware that one of their witnesses, who testified before the Grand Jury, realized that he mistakenly testified to loading defendant's trucks as he was on vacation at the time in question. Defendant argues that such failure to notify him was material as it would tend to exonerate him. However, the record reveals that there was evidence before the jury of the alternate route into the landfill allegedly taken by some of the trucks; therefore, the evidence submitted by defendant was not newly discovered.

Moreover, because defendant's allegations are conclusory and speculative and also appear to be based solely upon counsel's personal knowledge, County Court's determination without a hearing was properly within its discretion (see, id., at 128; *People v Brown, supra,* at 246-247). Furthermore, in light of the totality of the evidence and the large number of witnesses, any error in failing to disclose the recanted testimony of one Grand Jury witness following the indictment was harmless and was insufficient to "undermine the court's confidence in the outcome of the trial" (*People v Bryce, supra,* at 128).

Finally, the sentence imposed should not be disturbed. A sentence will not be reduced "unless extraordinary circumstances are presented or [the reviewing court finds] that the trial court abused its discretion" (*People v Wright,* 214 AD2d 759, 762, *lv denied* 86 NY2d 805; *see, People v Abrams,* 203 AD2d 723, 725, *lv denied* 83 NY2d 963). Here, County Court noted the requests for leniency and defendant's willingness to make restitution. Additionally, however, the court noted that defendant had a criminal record, including misdemeanor convictions for unauthorized use of a motor vehicle and criminal mischief, three misdemeanor convictions for driving while intoxicated and two separate disorderly conduct convictions, and that this past criminal history was being considered in its sentencing determination. As noted, all terms of incarceration run concurrently. In light of the strong position taken by the People and upon our review of the presentence investigation report, it is our view that County Court's decision should not be disturbed (*see, People v Carey,* 241 AD2d 748, 752, *supra*).

Cardona, P. J., Mikoll, Crew III and White, JJ., concur. Ordered that the judgment is affirmed, and matter remitted to the County Court of Saratoga County for further proceedings pursuant to CPL 460.50 (5).