509 S.E.2d 819

**The STATE of South Carolina, Respondent,**

v.

**Christopher J. FULTON, Appellant.**

No. 2904.

Court of Appeals of South Carolina.

Heard Nov. 5, 1998.

Decided Nov. 23, 1998.

J. Joseph Condon, Jr., of North Charleston, for Appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General G. Robert DeLoach, III, all of Columbia; and Solicitor David Price Schwacke, of North Charleston, for Respondent.

ANDERSON, Judge:

Christopher J. Fulton was convicted of armed robbery and possession of a firearm during the commission of a violent crime. He received concurrent sentences of fifteen years in prison for armed robbery and five years for possession of a firearm. Fulton appeals, alleging the trial judge erred (1) in excluding a letter Fulton wrote to the victim on the basis it was a "self-serving statement," and (2) in allowing two State's witnesses to testify on reply when they did not remain sequestered after their initial testimony. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

At approximately 3:30 p.m. on October 29, 1996, Fulton accompanied Marcus Quarles to Israel Fogle's used car lot in Charleston County. After inspecting one of the vehicles, Fulton asked Fogle for his business card. Fogle opened his wallet, in which several $100, $50, and $20 bills were visible, and gave Fulton a business card. Fulton and Quarles then

left the car lot and went to St. Andrews High School, where they ran into Keenan Brown.[1]

Fulton, Quarles, and Brown returned to Fogle's car lot approximately thirty minutes later. Fulton asked Fogle for permission to look at a 1987 Plymouth on the lot. Fogle returned with the key. As Fogle attempted to unlock the door to the vehicle, Brown drew a pistol and demanded Fogle's wallet. When Fogle reached for his wallet, he grabbed the gun from Brown. During the struggle, Fogle dropped his wallet on the ground. All three men fled the scene, taking Fogle's wallet. Fogle attempted to fire the gun as the men left with his wallet, but the gun did not fire. Fulton, Quarles, and Brown met up several minutes later at St. Andrews High School. The three men were arrested later the same day.

At trial, Fulton admitted on direct examination that he accompanied Quarles and Brown to Fogle's used car lot. However, Fulton stated he left Quarles and Brown alone for several minutes to go to the restroom just before they left St. Andrews High. When Fulton returned from the restroom, Quarles asked him to return to the car lot to look at another vehicle. Fulton maintained he was unaware the others intended to rob Fogle when they returned to the lot. Fulton testified he attempted to explain to Fogle that he had nothing to do with the robbery when they were at the car lot. However, Fogle was "going crazy pointing the gun," so he got scared and ran.[2]

On cross-examination, Fulton admitted his written statement to the police did not include his alleged attempt to explain his innocence to Fogle. Rather, his statement merely indicated that after Brown started running away, he fled the scene with Quarles after Fogle held the gun on them. On redirect examination, defense counsel sought to introduce a letter Fulton wrote to Fogle at some point after Fulton's arrest. The letter stated in pertinent part:

---

1. Brown's first name variously appears as "Keenan" or "Keenean" in the briefs and record on appeal.

2. Brown testified Fulton informed him on the way to the car lot that the gun was unloaded.

I was with the Two boys that rob you. I'm writing this letter to let you know that I didn't know that they were going to do that. At the time when you snatch the gun, I was trying to explain to you that I didn't know what was going on but I was so scared of the gun being pointed at me I ran. Being lock up in jail for Two week helped me open my eye's an wake up. To see who my friends really are. Now I'm out on bond doing house arrest waiting on the court date.

Over defense counsel's objection, the trial judge excluded the letter as self-serving. Fogle was called in reply and testified Fulton never tried to explain his innocence at the scene, but merely ran away after Fogle grabbed the gun.

## ISSUES

I. Did the trial judge err in failing to allow Fulton's counsel to rehabilitate him with a prior consistent statement, i.e., Fulton's letter to the victim proclaiming his innocence?

II. Did the trial judge err in allowing two of the State's witnesses to testify in reply when they were no longer sequestered?

## LAW/ANALYSIS

### I. USE OF PRIOR CONSISTENT STATEMENT FOR REHABILITATION

■ Fulton argues the trial judge erred in excluding his letter to Fogle as a "self-serving" prior consistent statement because it was admissible as rehabilitative, although not substantive, evidence to rebut the implication his testimony at trial was a recent fabrication or the result of an improper motive. We disagree.

The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion. *See State v. Tucker*, 319 S.C. 425, 462 S.E.2d 263 (1995), *cert. denied*, 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996); *State v. Bailey*, 276 S.C. 32, 274 S.E.2d 913 (1981). To warrant reversal, an appellant must show not only an alleged error, but

resulting prejudice. *State v. Thompson,* 305 S.C. 496, 409 S.E.2d 420 (Ct.App.1991) (the admission and exclusion of evidence is largely a matter of trial judge discretion, and the judge's rulings will not be overturned on appeal unless the judge committed a manifest abuse of discretion and the defendant suffered prejudice as a result).

Under the South Carolina Rules of Evidence (SCRE), a prior consistent statement is admissible if the declarant testifies at trial and is subject to cross-examination concerning the statement, the statement is consistent with the declarant's testimony, and it is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive; provided, however, the statement must have been made *before the alleged fabrication, or before the alleged improper influence or motive arose.* Rule 801(d)(1)(B), SCRE.

Thus, under our Rules of Evidence, enacted in 1995, a prior consistent statement made by a witness before a motive to fabricate arose is admissible to rebut an express or implied charge of recent fabrication or improper motive. Pursuant to Rule 801, the prior consistent statement is nonhearsay and comes in as substantive evidence, i.e., it is admissible for the truth of the matter asserted. *See* Note to Rule 801(d)(1)(B), SCRE. In this case, Fulton wrote the letter to the victim proclaiming his innocence at some point after his arrest and detention. At that point, Fulton clearly had an obvious motive to fabricate his exculpatory claim he had no knowledge of the robbery. Therefore, the statement is not admissible under Rule 801(d)(1)(B). Fulton concedes this point on appeal and agrees his statement is not admissible as substantive evidence under Rule 801(d)(1)(B) because it was written after his improper motive arose.

Fulton contends, however, the letter is an admissible prior consistent statement notwithstanding the Rule because it was offered for "rehabilitative purposes" rather than as substantive evidence. He contends the temporal requirement that the statement be made before a motive to fabricate arose is not applicable when the statement is offered merely as rehabilitative evidence rather than as substantive evidence under Rule 801(d)(1)(B); he essentially asserts a prior consistent state-

ment made at any point may potentially be used in rebuttal. We disagree, concluding the requirement that the prior consistent statement predate the motive to fabricate existed under the common law prior to enactment of the SCRE and survives its adoption.

### South Carolina Law Prior to the Adoption of the SCRE

Before the adoption of Rule 801(d)(1)(B), SCRE, South Carolina common law allowed prior consistent statements to be used for merely "rehabilitative" purposes—the statement could be used to rehabilitate a witness whose credibility had been called into question by a charge of recent fabrication or improper motive. Contrary to Fulton's assertion, the requirement in Rule 801(d)(1)(B) that the prior consistent statement be made before a motive to fabricate existed is not totally new. Rather, as stated in the Note to Rule 801, SCRE, this limitation is "similar to the limitation previously contained in [South Carolina] case law that a prior consistent statement is admissible only where it was made *prior to the declarant's relation to the cause.*" (Emphasis added.) *Cf., e.g., Jolly v. State,* 314 S.C. 17, 20, 443 S.E.2d 566, 568 (1994) ("[W]hen a witness has been impeached by proof that the witness has made a prior inconsistent statement, proof is allowed that the witness made a prior consistent statement, provided that the prior consistent statement must have been made before the 'existence of [the] relation of [the witness] to the cause.'") (citation omitted);[3] *Burns v. Clayton,* 237 S.C. 316, 336–37, 117 S.E.2d 300, 310 (1960) ("Where the credit of a witness has been impeached by proof or imputation that he has made declarations inconsistent with what he has sworn to, an exception to the hearsay rule permits proof of his declarations, consistent with what he has sworn to, made on other occasions prior to the existence of his relation to the cause.").

"Under state common law existing before adoption of the evidentiary rules, the consistent statement was required to have been made before 'existence of the [witness's] relationship to the cause.'" E. Warren Moise, *Impeachment Evidence: Attacking and Supporting the Credibility of Witnesses*

---

3. In *Jolly,* the court stated the prior consistent statement was admissible as an exception to the hearsay rule. *Id.*

*in South Carolina* 51 (1996) (citation omitted). This phrasing is found in an early case from our supreme court, *State v. McDaniel,* 68 S.C. 304, 47 S.E. 384 (1904). In *McDaniel,* after the State's impeachment of a defense witness with prior inconsistent statements, defense counsel attempted to rehabilitate the witness with prior consistent statements from a coroner's inquest. The court held as follows:

> [W]here evidence of contradictory statements by a witness is offered by way of impeaching the witness, it is not competent in reply to offer evidence that the witness has on other occasions made statements similar to what he has testified in the cause. 1 Greenleaf, Ev. § 469; 10 Ency. Pl. & Pr. 330; *Davis v. Kirksey,* 2 Rich.Law, 176; *State v. Thomas,* 3 Strob. 269. There is an exception to this general rule, making such testimony competent *when it is charged that there is a design to misrepresent in consequence of the relation of the witness to the party or to the cause, by showing similar statements made before the relation existed.* 10 Ency.Pl. & Pr. 330; *State v. Thomas,* 3 Strob. 269. This exception to the general rule is illustrated in *Lyles v. Lyles,* 1 Hill, Eq. 76 [10 S.C.Eq. 76], for in that case it was charged that the witness alleged to have made contradictory statements had been induced to testify as he did on the trial by hope or promise of money, and so it was competent to show in reply that the witness had been heard *to make statements similar to his testimony at a time previous to the alleged improper relation to the cause.* It does not appear that the present instance falls within the exception. There is no ground for a distinction in questions of this kind between testimony on re-examination after cross-examination of [the] same witness and independent testimony. In the case of *State v. Gilliam* (S.C.) 66 S.C. 419, 45 S.E. 6, it was held it was not competent to corroborate the testimony of defendant's witness at the trial by showing that the witness made similar statements at the coroner's inquest.

*Id.* at 308, 47 S.E. at 385 (emphasis added).

Other courts have explained that even for purposes of rehabilitation, the prior consistent statement must have been made before the improper motive or motive to fabricate arose in order to rebut a charge of improper motive:

Ordinarily, prior out-of-court statements consistent with a witness's trial testimony are inadmissible in a criminal prosecution on the theory that repetition does not imply veracity. "An exception to this rule permits the introduction of a prior consistent statement to rehabilitate a witness whose credibility has been undermined by a specific suggestion of fabrication or of a motive to lie" at trial. When used for a rehabilitative purpose, a prior consistent statement must be directed only at the particular impeachment that occurred and must support the particular testimony that has been impeached. *Finally, the statement must have been made at a time when, considering all the circumstances, the witness did not have a motive to fabricate.*

*Prophet v. United States,* 602 A.2d 1087, 1093 (D.C.1992) (citations omitted) (emphasis added).

In *Illinois v. Lambert,* 288 Ill.App.3d 450, 224 Ill.Dec. 360, 681 N.E.2d 675 (Ill.App.Ct.1997), the court stated Illinois followed the common-law rule that prior consistent statements were admissible only for rehabilitative, not substantive purposes, and it did not adopt the provision of the federal rules of evidence allowing admission as substantive evidence. Even though the prior consistent statements were not admissible as substantive evidence, the court followed the premotive requirement in recognizing an exception to the general rule of inadmissibility: "Under this exception, a prior consistent statement is admissible, *so long as the presently imputed motive to testify falsely did not exist at the time of the prior statement,* to rebut the implication that the witness has a motive to testify falsely." *Id.* at 679 (emphasis added). *See also George v. Arkansas,* 270 Ark. 335, 604 S.W.2d 940 (Ark. 1980) (for a prior consistent statement to be admissible under exception to rule excluding prior consistent statements for statements offered to rebut an express or implied charge of recent fabrication or improper influence or motive, statement must predate the motive to fabricate); *Connecticut v. Anonymous,* 190 Conn. 715, 463 A.2d 533 (Conn.1983) (before a prior consistent statement may be used for rehabilitation of a witness's credibility, it must be shown the prior statement was made before the alleged bias, motive, or interest arose); *Connecticut v. Brown,* 187 Conn. 602, 447 A.2d 734 (Conn. 1982) (a prior consistent statement may be used to rehabilitate

a witness who has been impeached by a prior inconsistent statement, by a suggestion of a bias or interest which was not present at the time of the prior consistent statement, or by a suggestion of recent contrivance; court held a prior statement to the police was not admissible for rehabilitation of a witness alleged to have a motive to falsify when the same motive was also present at the time of the statement); *Massachusetts v. Balestra,* 18 Mass.App.Ct. 969, 469 N.E.2d 1299 (Mass.App.Ct. 1984) (defendant charged with vehicular homicide was not entitled to admission of her taped statement contained in police officer's report in which she stated she was not the driver, in that there could hardly be a rehabilitation because defendant had substantially the same motive to fabricate at time statement was made as later); *Cohen v. Covelli,* 276 A.D. 375, 94 N.Y.S.2d 782 (N.Y.App.Div.1950) (the "rehabilitation rule" means where the testimony of a witness is, in effect, assailed as a fabrication, resorted to for the exigencies of trial and motivated by some self-interest, the party calling him may show that at the time when the imputed motive did not exist, the witness made statements consistent with the testimony given at trial).

In *New York v. McDaniel,* 81 N.Y.2d 10, 595 N.Y.S.2d 364, 611 N.E.2d 265 (N.Y.1993), the court held when a witness's testimony is attacked either directly or inferentially as being a recent fabrication, the witness may be rehabilitated with a prior consistent statement only when it predates the allegedly improper motive:

> If upon cross-examination a witness' testimony is as-sailed—either directly or inferentially—as a recent fabrica-tion, the witness may be rehabilitated with prior consistent statements *that predated the motive to falsify.* This excep-tion is rooted in fairness; it would be unjust to permit a party to suggest that a witness, as a result of interest, bias or influence, is fabricating a story without allowing the opponent to demonstrate that the witness had spoken simi-larly *even before the alleged incentive to falsify arose.*

> Of course, not every inconsistency developed on cross-examination implies that the witness' testimony is perju-rious. "Mere impeachment by proof of inconsistent statements does not constitute a charge that the witness' testimony is a fabrication." *Moreover, in applying the*

*exception, it is important to identify when the motive to fabricate arose.* In some cases, the motive may exist from the outset, and thus rehabilitation with consistent statements may be impossible. For example, in *Davis* [*New York v. Davis,* 44 N.Y.2d 269, 405 N.Y.S.2d 428, 376 N.E.2d 901], we held that a postarrest police report was inadmissible to rehabilitate an officer when [the] defendant's theory was that the case was trumped up from the beginning.

*Id.* at 270 (citations omitted) (emphasis added). The court reiterated this premotive requirement in the recent case of *New York v. Seit,* 86 N.Y.2d 92, 629 N.Y.S.2d 998, 653 N.E.2d 1168 (N.Y.1995), in which it observed that, generally, a witness may not be corroborated or bolstered with evidence of prior consistent statements because "untrustworthy statements do not become more trustworthy merely by repetition." *Id.* at 1169. The court noted an exception exists for prior consistent statements used to rebut a charge of recent fabrication. However, the statement must have been made before the improper motive arose, and the statement comes in only as rehabilitative, not substantive, evidence:

Of course, not all inconsistencies developed on cross-examination imply that a witness' testimony is fabricated. Questions designed to demonstrate that the testimony is the product of confusion or mistake do not charge fabrication. The implication that the testimony was recently fabricated arises only if it appears that the cross-examiner believes and wants the jury to believe that the witness is testifying falsely to "meet the exigencies of the case." When the witness' testimony has been attacked for that purpose, *the witness may be permitted to show that he or she made similar statements at some earlier time when free from the alleged bias. The prior consistent statements antedating the motive to fabricate are not introduced to prove or disprove the facts in issue, but to rehabilitate the credibility of the witness.*

*Id.* at 1170 (citations omitted) (emphasis added).

South Carolina's Rule 801(d)(1)(B) makes a prior consistent statement admissible as *substantive* evidence under these circumstances, a change from the common law of this state. The question remaining is how the adoption of Rule

801(d)(1)(B) of the SCRE affected the use of prior consistent statements for "rehabilitative" purposes. To do so, we examine the genesis of this provision.

### Juxtaposing Rule 801, SCRE with the Federal Rule

Rule 801(d)(1)(B), SCRE is based upon its counterpart under the Federal Rules of Evidence. "Subsection (B) is the federal rule modified by adding the phrase 'provided, however, the statement must have been made before the alleged fabrication, or before the alleged improper influence or motive arose.' This modification, which is taken from the United States Supreme Court's interpretation of Rule 801(d)(1)(B) of the Federal Rules of Evidence in *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), is somewhat similar to the limitation previously contained in the case law that a prior consistent statement is admissible only where it was made prior to the declarant's relation to the cause." Note to Rule 801(d)(1)(B), SCRE. Although the federal rule does not contain an explicit temporal requirement, the United States Supreme Court held in *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) the federal evidentiary rule includes this premotive requirement because it embodies the common-law practice that had been followed for over a hundred years:

> The prevailing common-law rule for more than a century before adoption of the Federal Rules of Evidence was that a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it was inadmissible if made afterwards.

*Id.* at 156, 115 S.Ct. 696. The *Tome* court observed that in order to rebut a charge of improper motive or fabrication, the statement necessarily would have to be made before the improper motive arose; otherwise, if the same improper motive existed at the time of the prior statement, it would not be relevant to rebut the charge. "McCormick and Wigmore stated the rule in a more categorical manner: '[T]he applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made before the source of the bias, interest, influence or

capacity originated.' E. Cleary, McCormick on Evidence § 49, p. 105 (2d ed. 1972).... See also 4 J. Wigmore, Evidence § 1128, p. 268 (J. Chadbourn rev. 1972) ... ("A consistent statement, at a *time prior* to the existence of a fact said to indicate bias ... will effectively explain away the force of the impeaching evidence" ...)." *Id.*

The Court explained that "[i]mpeachment by charging that the testimony is a recent fabrication or results from an improper influence or motive is, as a general matter, capable of direct and forceful refutation through introduction of out-of-court consistent statements that predate the alleged fabrication, influence or motive. *A consistent statement that predates the motive is a square rebuttal of the charge that the testimony was contrived as a consequence of that motive.* By contrast, prior consistent statements carry little rebuttal force when most other types of impeachment are involved." *Id.* at 158, 115 S.Ct. 696 (emphasis added). The majority rejected the alternative theory that *any* prior consistent statement may be useful to rebut a charge of improper motive, analyzing as follows:

> The underlying [alternative] theory ... is that an out-of-court consistent statement, whenever it was made, tends to bolster the testimony of a witness and so tends also to rebut an express or implied charge that the testimony has been the product of an improper influence. Congress could have adopted that rule with ease, providing, for instance, that "a witness'[s] prior consistent statements are admissible whenever relevant to assess the witness's truthfulness or accuracy." The theory would be that, in a broad sense, any prior statement by a witness concerning the disputed issues at trial would have some relevance in assessing the accuracy or truthfulness of the witness's in-court testimony on the same subject. The narrow Rule enacted by Congress, however, cannot be understood to incorporate [this] theory.

*Id.* at 159, 115 S.Ct. 696.

In *Tome,* the Court noted that under the common law, prior consistent statements *made before the improper motive or influence arose* were previously admissible to rebut charges of improper motive; however, under the federal evidentiary rule, such statements were now considered nonhearsay and were

admissible as *substantive* evidence. *Id.* at 156, 162–63, 115 S.Ct. 696.

In the case currently before us, Fulton asks us to hold a prior consistent statement is admissible as rehabilitative evidence to rebut a charge of recent fabrication or improper motive where the statement was made *after* a motive to fabricate arose. Fulton contends he is not attempting to introduce the statement as substantive evidence under Rule 801(d)(1)(B), SCRE; therefore, the Rule's premotive requirement should not bar the statement because the Rule is not applicable. Fulton argues by analogy that his statement to the victim proclaiming his innocence should have come in because under the federal rules a prior consistent statement may be used solely as rehabilitative evidence even if the statement was made *after* the existence of an improper motive. He contends the evidentiary rule and its premotive requirement are not applicable where the evidence is offered only as rehabilitative, rather than substantive, evidence.

Fulton cites a case by the Fourth Circuit Court of Appeals which held the premotive requirement of Rule 801(d)(1)(B), Fed.R.Evid. does not apply when the statement is not offered for the truth of the matter asserted. In *United States v. Ellis,* 121 F.3d 908 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 738, 139 L.Ed.2d 674 (1998), the court concluded Rule 801(d)(1)(B) of the federal rules did not replace the admissibility of prior consistent statements to rehabilitate a witness, but merely allowed a certain subset of these statements to be used as substantive evidence of the truth of the matter asserted. *Id.* at 919. The court stated this expanded use does not apply to all prior consistent statements, just those offered to rebut a charge of recent fabrication or improper influence or motive. Therefore, the premotive requirement is not required when the statements are offered only for rehabilitative, rather than substantive purposes. *Id.*

There is, however, a split of authority among the appellate courts on this issue. *See generally* Frank W. Bullock, Jr. and Steven Gardner, *Prior Consistent Statements and the Premotive Rule,* 24 Fla.St.U.L.Rev. 509 (1997); 1 McCormick on Evidence § 47, at 177 n. 16 (John William Strong ed., 4th ed. 1992). In *United States v. Miller,* 874 F.2d 1255 (9th, Cir.

1989), the Ninth Circuit Court of Appeals reached a contrary conclusion. In *Miller,* after the government's impeachment of a defense witness, defense counsel sought to introduce seven prior consistent statements in an effort to rehabilitate the witness's credibility. The district court excluded the statements under Rule 801(d)(1)(B) of the federal rules because the statements were made after the witness's arrest, when the witness clearly had a powerful motive to fabricate an exculpatory story. *Id.* at 1271–72.

Miller argued, however, that although the statements were inadmissible as substantive evidence under the Rule, they were admissible for the limited purpose of rehabilitating the witness's impeached credibility. *Id.* at 1272. The Ninth Circuit rejected this distinction, noting that evidence the witness said the same thing at trial as on a prior occasion does not have any relevancy or probative value where the same motive to fabricate existed at the time of the prior statement because repetition does not imply veracity. *Id.* at 1272, 1274. The court held the statements were too self-serving to have any probative value, and noted the premotive requirement was not a function of the literal terms of the Rule, but of the need for relevancy and probative value. *Id.* The court reasoned as follows:

> First ... we fail to see how a statement that has no probative value in rebutting a charge of "recent fabrication or improper influence or motive," ... could possibly have probative value for the assertedly more "limited" purpose of rehabilitating a witness. If "repetition does not imply veracity," ... then proof of repetition cannot rehabilitate.
>
> Second, the distinction ... is inconsistent with the legislative history of Rule 801(d)(1)(B). Prior to the adoption of Rule 801(d)(1)(B), prior consistent statements were traditionally only admissible for the limited purpose of rebutting a charge of recent fabrication or improper influence or motive. See Fed.R.Evid. 801(d)(1)(B) advisory committee's notes. The Rule goes one step further than the common law and admits all such statements as substantive evidence. Id. The Rule thus does not change the type of statements that may be admitted; its only effect is to admit these statements as substantive evidence rather than solely for the purpose of rehabilitation. Accordingly, it no longer

makes sense to speak of a prior consistent statement as being offered solely for the more limited purpose of rehabilitating a witness; any such statement is admissible as substantive evidence under Rule 801(d)(1)(B). In short, a prior consistent statement offered for rehabilitation is either admissible under Rule 801(d)(1)(B) or it is not admissible at all.

*Id.* at 1272–73 (footnote omitted).

The rationale for this rule is "if the attacker has charged bias, interest, corrupt influence, contrivance to falsify, or want of capacity to observe or remember, the applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made *before* the source of the bias, interest, influence or incapacity originated." 1 McCormick on Evidence § 47, at 177 (John William Strong ed., 4th ed. 1992).

Rule 801(d)(1)(B), SCRE does not address the use of prior consistent statements solely for rehabilitation. However, we fail to see how a prior statement made *after* a motive to fabricate arose can be relevant to rebut a charge of improper motive, since the same motive to fabricate would have existed at the time the prior statement was made. The prior consistent statement cannot be said to carry any greater indicia of trustworthiness merely by repetition. We reject Fulton's contention a distinction should be recognized for statements not admitted as substantive evidence, finding that under the common law existing prior to the adoption of the SCRE, the prior consistent statement must have predated the alleged improper motive even to be used as rehabilitative evidence. Accordingly, we hold when a prior consistent statement is offered for the purpose of rebutting an express or implied charge that the witness's testimony is the result of a recent fabrication or improper influence or motive, the statement must predate any alleged improper influence or motive. Because Fulton's post-motive statement is inadmissible under Rule 801(d)(1)(B), SCRE as substantive evidence, it is also inadmissible for "rehabilitative" purposes. The trial judge did not err in excluding this statement.

## II. STATE'S WITNESSES ON REPLY

█ Fulton next argues the trial judge erred in allowing testimony from two of the State's witnesses, Israel Fogle and Anthony Fogle, called on reply. He contends the witnesses remained in the courtroom after their initial testimony, although they had been sequestered previously.

█ The trial judge may order the sequestration of witnesses upon the judge's own motion or that of any party. Rule 615, SCRE. A party is not entitled to the sequestration of witnesses as a matter of right. *State v. Boyd*, 288 S.C. 206, 341 S.E.2d 144 (Ct.App.1986). Rather, the decision to sequester witnesses is left to the sound discretion of the trial judge. *State v. Sullivan*, 277 S.C. 35, 282 S.E.2d 838 (1981); *State v. Harris*, 275 S.C. 463, 272 S.E.2d 636 (1980); *State v. LaBarge*, 275 S.C. 168, 268 S.E.2d 278 (1980); *State v. Jackson*, 265 S.C. 278, 217 S.E.2d 794 (1975).

This discretion extends to the State's right to recall a witness in reply who was present in the courtroom during a portion of the trial. *Cf., e.g., State v. Cabbagestalk*, 281 S.C. 35, 314 S.E.2d 10 (1984) (the decision whether to waive a sequestration order for witnesses present during the trial rests in the sound discretion of the trial judge). After a review of the record, we find no abuse of discretion by the trial judge in allowing the State to present the reply testimony. *State v. Farrow*, 332 S.C. 190, 504 S.E.2d 131 (Ct.App. 1998) (the admission of reply testimony is within the sound discretion of the trial judge).

## CONCLUSION

For the foregoing reasons, we hold the trial judge did not err in excluding Fulton's prior consistent statement and in allowing the reply testimony of two State's witnesses. Fulton's convictions and sentence are therefore

**AFFIRMED.**

HOWELL, C.J., and STILWELL, J., concur.