■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHELLE PARKS, Appellant. [861 NYS2d 449]—

Spain, J.P. Appeal from a judgment of the County Court of Schoharie County (Bartlett III, J.), rendered January 3, 2007, upon a verdict convicting defendant of the crimes of offering a false instrument for filing in the first degree and falsifying business records in the first degree.

Defendant and codefendant, Danielle Croote, are employees of Evening Star Bookkeeping (hereinafter ESB), a private company hired to provide accounting and bookkeeping services for the Town of Schoharie, Schoharie County, including the Town of Schoharie Justice Court. During the period in issue, January 2001 through March 2002 (the audit period), defendant and Croote reportedly noticed a reduction of cash receipts and an increase in dismissed tickets[1] in Justice Court and discussed

---

1. The increase was attributed at trial to an effort to dispose of years of stale tickets which had not been prosecuted.

their concerns with their ESB supervisor and town officials; Martin Shrederis, the Town Supervisor, thereafter requested an audit by the State Comptroller. An investigation and full audit by Joseph Notro, associate examiner with the Comptroller, revealed numerous irregularities in the handling of the court's finances and accounting/bookkeeping practices,[2] which were deemed "totally unsatisfactory." Notro determined that approximately $25,000 received by the Justice Court during the audit period was "missing," i.e, it could not be accounted for in that no available records indicated that the funds had been deposited or reported as income in the court's monthly reports to the Comptroller. During the audit period, Justice Woods was the Senior Justice in the court, retiring at the end of 2001 due to health problems; he later died. Justice Kennedy was the other Justice, serving since 1996.

Defendants were jointly accused in a six-count indictment related to their handling of Justice Court finances. After a jury trial, Croote was acquitted on all counts. Defendant was convicted of offering a false instrument for filing in the first degree (count two) and falsifying business records in the first degree (count three), and acquitted on the remaining counts. She was sentenced to concurrent five-year terms of felony probation, and required to pay restitution of $745, perform community service and refrain from accepting employment as a bookkeeper.[3] On appeal, we agree with defendant's contentions that the convictions are not supported by legally sufficient evidence and are against the weight of the credible evidence and, thus, we reverse the judgment of conviction.

Under count two of the indictment, defendant was accused of offering a false instrument for filing in the first degree (see Penal Law § 175.35). As amplified by the bill of particulars, defendant allegedly deposited two checks covering fines payable to Justice Court totaling $245 into Justice Woods' fine account; de-

2. The reported irregularities included fines being paid in the Justices' chambers rather than in open court, fine checks made payable to "cash" and not marked "for deposit only," all bookkeeping and accounting functions being performed by private outside employees with no segregation of duties, and the box containing fines being unsecured and its contents undocumented by any public employee upon intake. Other irregularities included the unregulated use of a justice's signature stamp, failing to record or cross-reference transactions in court account registries, permitting outside bookkeepers to take possession of original, official court documents (e.g., fine information sheets) which were not returned, and making checks out to "cash" from court accounts for use as "petty cash" in chambers without any record keeping.

3. Shrederis testified that ESB continued to provide accounting and bookkeeping services for the Town at the time of the 2006 trial, despite the indictments.

fendant then removed that money by filling out a check (No. 2116)—made out to "cash" for $245—drawn on that same fine account. She used Justice Woods' signature stamp on the check front (as drawer), endorsed the back of the check with her own signature and cashed the check, stealing the funds. The audit disclosed that the $245 paid in fines was never remitted by the court to the Comptroller, or reported on the court's monthly report to the Comptroller. The December 2001 Comptroller's report (the subject report) is the "false instrument" which defendant is alleged to have filed, knowing it contained false information (i.e., an omission of the $245 received in fines) with intent to defraud the state.

The People established, at trial, through the testimony of Justice Kennedy and Shrederis, that, pursuant to the inherited practice in Justice Court during the audit period, ESB employees were delegated responsibility for completing the court's required monthly reports to the Comptroller listing the court's activities and income, which were briefly reviewed and signed by the Town Justices, one of whom made out a check to the state in the amount required by the report. Kennedy's testimony also set forth that the Justices and court staff left the fine box[4] —containing fines paid to the court including checks and cash— for ESB employees to pick up without documenting or recording its contents; ESB employees made all court bank deposits, reconciled bank statements for court accounts, wrote checks payable to "cash" from court accounts for "petty cash" at the direction of the Justices, and maintained the check registries for the court's bail and fine accounts.[5]

However, no testimony or evidence was adduced that defendant herself compiled or made any representations regarding the information for the subject report, that she signed that report or knew its contents or assisted anyone in its preparation or filing (see People v Sabo, 16 AD3d 920, 921-922 [2005], lv denied 5 NY3d 794 [2005]; cf. People v Burt, 246 AD2d 919, 921 [1998], lv denied 91 NY2d 1005 [1998]). No ESB, bank or other town or court employees testified, and neither Justice Kennedy nor Notro established in their testimony that defendant specifically played any role in the preparation or filing of

---

4. The fine box was kept, often unlocked, in the court offices. Fines were collected in the Justices' chambers, the checks and cash were attached to original fine information sheets, and they were put into the box after night court. Justice Woods often opened court mail during the day, entered the fine payments in the computer system, and put the fine checks into the box. ESB employees picked up the box, made deposits at the bank, and reportedly discarded the original fine information sheets which were not available for the audit.

5. Justice Woods also made out checks to cash for petty cash.

this or any Comptroller report, signed by one of the Justices (*cf. People v Marshall*, 39 AD3d 967, 968 [2007], *lv denied* 9 NY3d 878 [2007]; *People v Maxam*, 301 AD2d 791, 793 [2003], *lv denied* 99 NY2d 617 [2003]). Likewise, scant proof permits the inference that defendant herself deposited the underlying fine checks, that the endorsement on the back of check No. 2116 was her signature, that she cashed check No. 2116 or kept the proceeds. Indeed, the testimony demonstrated that the Justice's signature stamp (and fine account checkbook) were readily available and that numerous people had access to them; also, the court's practice included making checks out to "cash" for "petty cash." Viewing the evidence most favorably to the prosecution, and giving them the benefit of every permissible inference, the evidence permits—at most—the conclusion that defendant had the opportunity to cash check No. 2116 and steal its proceeds, and *may* have prepared the subject report—or assisted other ESB or court employees in its preparation—given ESB's responsibility for preparing such reports for Justice Court (*see People v Contes*, 60 NY2d 620, 621 [1983]; *cf. People v Thompson*, 33 AD3d 825, 826 [2006], *lv denied* 8 NY3d 927 [2007]). The evidence, however, failed to establish beyond a reasonable doubt that it was defendant who prepared and filed the subject report (or cashed check No. 2116) or that she harbored the intent to defraud the state (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

Similar deficiencies existed in the proof underlying count three, which charged defendant with falsifying business records in the first degree (*see* Penal Law § 175.10). As amplified, the charge alleged that defendant took check No. 179 (dated October 29, 2001) from the Justice Court's common bail account checkbook, made it payable to "cash" for $500, used Justice Woods' signature stamp on the front and back (as an endorsement), and also endorsed the back with her own name, cashing the check and stealing the funds. That check was not listed in the bail account registry. The crux of the charge is that defendant, acting with intent to defraud the state by committing or concealing the crime of larceny, made the following notation in the memo of that bail account check: "transfer fine monies"— the "false entry" element—although the proceeds of that bail account check were never deposited into either of the court's fine accounts. As with count two, no proof was elicited establishing that defendant made out, endorsed or cashed that bail account check (*cf. People v Mathis*, 218 AD2d 817, 817-818 [1995], *lv denied* 86 NY2d 844 [1995]). Justice Kennedy himself conceded that the bail account checkbook was kept in an unlocked drawer in court offices and that the endorsement on

the back of check No. 179 did not look like defendant's signature (the handwriting was not recognizable to him), and there was no testimony to the contrary. Again, the proof established, at most, defendant's opportunity to have accomplished this crime, but it did not establish her guilt beyond a reasonable doubt (*cf. People v Johnson*, 39 AD3d 338, 339 [2007], *lv denied* 9 NY3d 877 [2007]; *People v Argus*, 17 AD3d 1155, 1156 [2005], *lv denied* 5 NY3d 784 [2005]; *People v Burt*, 246 AD2d at 920-921).

We also find that the verdicts on both counts were dependent upon inferences insufficiently supported by any compelling evidence (*see People v Danielson*, 9 NY3d 342, 349 [2007]; *People v Bleakley*, 69 NY2d at 495). Thus, the verdicts on both counts are not supported by the weight of the evidence.

Lahtinen, Kane, Malone Jr. and Stein, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, and indictment dismissed.

