504 S.E.2d 131

**The STATE, Respondent,**

v.

**James Lamont FARROW, Appellant.**

**No. 2865.**

Court of Appeals of South Carolina.

Heard May 5, 1998.

Decided June 29, 1998.

Assistant Appellate Defender Robert M. Pachak, of the S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr.; and Solicitor Warren B. Giese, Columbia, for respondent.

PER CURIAM:

James Farrow (Farrow) appeals his conviction for armed robbery. Farrow argues the trial court erred in allowing improper reply testimony and in excluding a T-shirt from evidence. We affirm.

## FACTS

On April 2, 1996, Majik Market was robbed. According to the clerk, approximately fifteen minutes before the store's midnight closing time, a man who stood over 6 feet 5 inches tall walked into the store, threatened her at gunpoint and took the register till which contained $165. Although she could not identify her assailant from a photo line-up, a surveillance camera inside the store recorded the robbery. The assailant wore a black leather jacket, a white T-shirt with "Fila" written on it, jeans or black pants, and a left earring.

Shortly after the robbery, a responding police officer retrieved the register till from the roadway approximately one mile from the store. Fingerprint impressions taken from the till matched Farrow's fingerprints. On April 10, 1996, an investigator went to Farrow's home and observed Farrow wearing a white Fila T-shirt.

During its case in chief, the State entered the white T-shirt, which Farrow wore on April 10, 1996, into evidence. According to the investigating officer, the T-shirt was similar to the one he observed the robber wearing on the surveillance videotape from the Majik Market.

At the conclusion of the first day of trial, a juror advised the court of several questions he had concerning the videotape of the robbery and the video printer which was used to prepare the photo array shown to the store clerk. After a brief discussion among counsel, the trial judge instructed the State that it could respond to the questions in reply to the defense's case. Upon the jury's return the next day, the trial judge acknowledged receipt of the juror's questions, notified the jurors that counsel discussed the issue, and resumed the trial.

Farrow's defense to the charges was misidentification and alibi. At trial, Farrow offered the testimony of Troy Diggs (Diggs). Diggs testified he and Farrow were together all day on April 2, 1996. He further testified that Farrow was wearing blue jeans, a black coat, and a spray-painted T-shirt on the day in question. The T-shirt Diggs described did not resemble the Fila T-shirt the State entered into evidence. Rather, the T-shirt Diggs claimed Farrow was wearing had "Tykim" spray-painted on the front and an art design from a rap artist's album cover on the back. According to Diggs, he

and Farrow bought the spray-painted T-shirt at the mall earlier on the same day. Diggs also testified he recognized the Fila T-shirt the State had entered into evidence and recalled Farrow purchasing it on April 4, 1996, two days after the robbery. Further, Felicia Graham, Farrow's girlfriend, testified Farrow showed her "some stuff he got from the mall," including the white Fila T-shirt, on April 4, 1996.

The jury found Farrow guilty of armed robbery and the trial court sentenced him to thirty years imprisonment. This appeal followed.

## ANALYSIS

### I. Juror Questions

■ Farrow contends the trial court erred in allowing the State to address a juror's questions on reply. Farrow further contends the reply testimony was improper because it was not in response to an issue raised by the defense.

After the jury had been dismissed for the first day with instructions not to discuss the case among themselves or with others, the bailiff gave the judge written questions from one of the jurors. The juror inquired as to the type, model, resolution, technical operation capabilities, and mounting of the Majik Market video surveillance camera which was used to record the robbery. The juror also inquired about the type of video printer which was used to generate certain video stills and to prepare a photo array shown to the store clerk for identification purposes. After a brief discussion, the court stated it would allow the State, if it chose to do so, to address the juror's questions during its reply.

During the State's case in reply, and over Farrow's objection that the inquiries were improper on reply, the trial court allowed the State to recall Officer James Stewart (Stewart). Stewart testified he did not know the brand name of the camera, but that it was "nothing fancy." According to Stewart, the camera was "pretty much permanently mounted ... just a lens that was mounted on top of a shelf and a cable run[s] to pretty much a standard off-the-shelf V.C.R., runs in regular speed, probably very similar to one you would use at your home. Nothing fancy." Regarding the video printer,

Stewart testified it was probably ten years old and prints whatever is on the T.V. screen when the operator presses the "print" button. He further stated the quality of the video printout image is less than that of a television image.

The State argues that what occurred here is equivalent to the reopening of its case to permit it to prove an essential element of its case which is governed by Rule 611, SCRE and *State v. Humphery,* 276 S.C. 42, 274 S.E.2d 918 (1981). We disagree. Clearly, some of Stewart's testimony, which was adduced during the State's case in reply, rebutted evidence presented during the defense's case. In presenting his defense, Farrow, however, did not address the technical matters which were designed to answer the earlier questions posed by the juror.

We thus hold the reply testimony regarding the video camera was improper because it was not presented to rebut evidence adduced by Farrow. *Daniel v. Tower Trucking Co.,* 205 S.C. 333, 32 S.E.2d 5 (1944) (Reply testimony should be limited to rebuttal of matters raised in defense; it should not be used to complete the plaintiff's case in chief). Nevertheless, the improper admission of this evidence may not serve as the basis for reversal unless found to be prejudicial. *State v. Bailey,* 279 S.C. 437, 308 S.E.2d 795 (1983). Moreover, ordinarily, the admission of reply testimony is within the sound discretion of the trial court. *Id.* We are unable to discern any prejudice to Farrow resulting from the testimony. The testimony elicited from Stewart was general in nature. In effect, he testified the camera was not sophisticated and was similar to a home camera. We hardly see how such testimony benefited the State by strengthening the probative value of the camera evidence. This is especially so in view of the fact that the video camera and photos were entered into evidence without objection, and the store attendant testified at length about the video pictures.

Farrow also contends the trial court failed to "strictly adhere to the procedures for dealing with jury questions [as] outlined in *Day v. Kilgore,* 314 S.C. 365, 444 S.E.2d 515 (1994)." Specifically, he argues the trial court failed to instruct the jury not to begin deliberations. We find no reversible error.

In *Day v. Kilgore,* our Supreme Court, held juror questions
are discouraged, however, these questions do not constitute
reversible error *per se.* The court further recognized the trial
court retains some discretion in these matters. *Id.* (citing
*DeBenedetto by DeBenedetto v. Goodyear Tire & Rubber Co.,*
754 F.2d 512 (4th Cir.1985)).

In finding the trial court abused its discretion, the *Day*
court adopted procedures to "protect the integrity of the fact-
finding process." The court held that when a juror wishes to
question a witness, the trial court should immediately send the
jury to the jury room with instructions not to begin delibera-
tions. *Day,* 314 S.C. 365, 444 S.E.2d 515. The question must
then be submitted in writing and delivered to the trial judge
by the bailiff. *Id.* The trial judge should then read the question
on the record outside of the jury's presence and entertain any
objections from either counsel. *Id.* Thereafter, the trial judge
must, consistent with the general law, determine whether the
juror's question is relevant and competent. *Id.* Deviation
from these procedures constitutes an abuse of discretion. *Id.*

As noted above, the circumstances of this case do not fit
squarely into the *Day* scenario. This is not the case of jurors
being permitted to ask a specific witness questions; rather it
is the situation of the State asking questions suggested by the
juror. After the juror submitted the questions, the court
allowed the State to decide whether to ask the questions on
reply. Before the trial judge dismissed the jury for the day,
he instructed them not to talk about the case among them-
selves or with others. Additionally, the trial court's prelimi-
nary instructions to the jury included directions not to begin
deliberating until they were requested to do so. Although
these instructions were given before the trial judge received
the juror's note, we find the instructions adequately informed
the jury that they should not engage in premature delibera-
tions. Moreover, there is no indication in the record that the
other jurors knew about the juror's note until they returned
the next morning. Even then, the trial court simply advised
the jury that it had received a note from a juror. It did not
reveal the contents of the note.

After the trial court's dialogue regarding the juror's note,
Farrow made no objection to the note. Not until the State
asked Stewart questions about the camera on reply, did

Farrow object on the basis that the questions were improper reply.

Next, we find no merit in Farrow's assertion that the juror's questions evidence premature deliberations. Farrow offers no support for this position and we can find none in the record before us.

In any event, Farrow cannot demonstrate prejudice. The only argument Farrow makes in this regard is that "the State was given an unfair advantage to strengthen their case by responding to the jury question on reply." Farrow offers us no guidance as to how Stewart's testimony about the technical capabilities, or lack thereof, of the video equipment served to strengthen the State's case against him. Moreover, our reading of the testimony reveals no such bolstering.

Notwithstanding the trial court's discretion in this practice, we, nevertheless, strongly echo our Supreme Court's suggestion in *Day* that trial courts discourage juror questions.

## II. Exclusion of Evidence

Farrow contends the trial court erred in excluding a T-shirt from evidence as a sanction for his failure to comply with the rules governing discovery. We disagree.

Rule 5(b)(1)(A), SCRCrimP provides, among other things, that tangible objects within the defendant's possession, custody or control which the defendant intends to introduce as evidence in chief at the trial must be disclosed to the prosecution where the prosecution has complied with discovery and has requested such disclosure. Rule 5(b)(d)(2), SCRCrimP provides that the trial court may prohibit the defendant from introducing undisclosed evidence.

On the second day of trial, Farrow's counsel attempted to submit into evidence a spray-painted T-shirt which matched the description given by Farrow's alibi witness. The T-shirt was allegedly the shirt which Farrow wore on the night of the robbery. The State objected on the ground that the T-shirt had not been produced earlier pursuant to its Rule 5 request. Farrow's counsel explained to the court that he had only wondered about the shirt's whereabouts on the previous day, and had not considered the matter further. He further stated one of the witnesses brought the shirt to court that morning. The trial court excluded the shirt from evidence, reasoning

that admitting it into evidence at that juncture of the trial would unfairly prejudice the State's case.

Farrow does not argue that the T-shirt was not within his possession, custody or control or that the prosecution did not properly request discovery of the shirt as evidence pursuant to Rule 5, SCRCrimP. In fact, Farrow offers no explanation for his failure to disclose the shirt in a timely fashion. Thus, we can discern no error in the trial court's decision to exclude the shirt from evidence.

█ Additionally, Farrow cannot show prejudice resulting from the exclusion of this evidence. Without question, the T-shirt, which Diggs described, was not similar to the T-shirt which the State submitted into evidence. While admission of the T-shirt may have buttressed the alibi witness's testimony, its exclusion was not prejudicial. We find the trial court properly exercised its discretion in this matter. *JKT Co. v. Hardwick,* 274 S.C. 413, 265 S.E.2d 510 (1980); *Sullivan v. Davis,* 317 S.C. 462, 454 S.E.2d 907 (Ct.App.1995) (finding the trial court has discretion in deciding whether to admit or exclude evidence; the court's decision will not be disturbed on appeal absent clear showings of both abuse and prejudice.)

For the foregoing reasons, the conviction is

**AFFIRMED.**

HOWELL, C.J., CURETON and GOOLSBY, JJ., concur.