694 S.E.2d 781

**The STATE, Respondent,**

v.

**Kenneth L. HUCKABEE, Appellant.**

**No. 4696.**

Court of Appeals of South Carolina.

Heard May 19, 2010.
Decided June 9, 2010.
Rehearing Denied July 20, 2010.

234

Appellant Defender Lanelle Cantey Durant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

PIEPER, J.

Kenneth L. Huckabee was convicted of voluntary manslaughter and assault of a high and aggravated nature. He now appeals, arguing the trial court (1) erred in allowing the State's primary witness to testify on reply following Huckabee's testimony when the witness was under a sequestration order but had been present in the courtroom following her initial testimony during the State's case-in-chief, and (2) erred in failing to instruct the jury that the sale of crack cocaine was irrelevant to the fault element in determining self-defense. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

On July 18, 2007, Kelly Ann Tavenier drove Jerry Bridwell to pick up Karim Hudani in Spartanburg, South Carolina. Bridwell was going to purchase Lortab pills from Hudani. Once Tavenier picked up Hudani, he told Tavenier to drive down a road where his friend lived. Tavenier traveled down a dead end street until Huckabee drove up in a white car with his girlfriend in the passenger seat. Hudani got out of Tavenier's car and went over to Huckabee. Huckabee got out of his car and walked over to the passenger side of Tavenier's car where Bridwell was seated. Huckabee then pulled out a gun, placed it in Bridwell's face, and demanded that Bridwell give Huckabee all of his money. Bridwell replied that he did not have any money, at which point Huckabee fired several shots at the ground and continued to demand Bridwell's money. Tavenier then sped off and heard three or four gun shots. As she drove off, she asked Bridwell if he was okay and he replied that he had been shot. Bridwell told Tavenier to take him to the nearest convenience store because typically police officers were always there and Tavenier did not know the route to the nearest hospital.[2] As she drove, Bridwell dialed 9–1–1. Once they arrived at the convenience store, Tavenier got out of the car, found a blanket in the back seat of the truck, and used it to apply pressure to Bridwell's back.

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Bridwell died as a result of the two gunshot wounds.

Meanwhile, when Huckabee returned to his car after Tavenier drove off, Huckabee told his girlfriend, "the lady pulled a gun on him." Hudani testified that he did not see Tavenier with a gun in the truck and the only person he saw with a weapon was Huckabee.

Once police arrived at the convenience store, Bridwell was transported to the hospital and Tavenier was taken back to the crime scene for questioning. Shortly thereafter, Tavenier was taken to the sheriff's department for additional questioning and for gunshot residue testing. Officer Simmons found no gunshot residue present on Tavenier. Officer Simmons further testified that there was only a slightly elevated amount of lead on Tavenier's hands which was not consistent with having fired or even handled a weapon. On cross-examination, however, Officer Simmons testified that gunshot residue could be removed from a person's hand by wiping it on a blanket or removed by exposure to a large amount of blood.

The grand jury indicted Huckabee on two separate charges of assault with intent to kill (AWIK) and murder on October 26, 2007. The case proceeded to trial March 4–6, 2008. During pretrial motions, the court granted defense counsel's motion to sequester the witnesses, with the exception of the lead case agent and Patricia Bridwell, the wife of the victim.

At trial, Huckabee testified that when he approached Tavenier's vehicle, he asked Tavenier and Bridwell what they wanted, at which point Tavenier unzipped her pocketbook, pulled out a gun, and aimed it at Huckabee. Huckabee stated that Tavenier demanded that Huckabee give her all of his money and "dope." Huckabee further testified that Tavenier then fired the gun and Huckabee fell to the ground as he heard another shot fired. Once she shot again, Huckabee pulled his gun out and started shooting into the truck.

After the defense rested, the State called Tavenier in reply. Defense counsel objected to her reply testimony because she had been seated in the courtroom since her initial testimony and, thus, would be in violation of the sequestration order. The court responded, "[t]his is reply testimony," to which defense counsel stated, "I understand. But she was allowed to stay in the courtroom." The court noted defense counsel's objection and proceeded to allow Tavenier to testify. During

her reply testimony, Tavenier stated that she has never owned a purse in her life and only carries a man's wallet.

The judge charged the jury on the offenses of murder and AWIK, and the lesser included offenses of voluntary manslaughter and assault of a high and aggravated nature. Additionally, the judge instructed the jury on self-defense. In charging the jury on the four elements which make up the defense, the judge stated the following regarding the first element:

> First, it must be shown that the defendant was without fault in bringing on the immediate difficulty which necessitated the use of deadly force against another person that resulted in death or the infliction of serious bodily harm. In other words, a defendant cannot provoke or initiate or otherwise through his own fault bring about a difficulty and then claim the right of self-defense in the use of force in repelling an attack caused by his own provocation.

During jury deliberations, the foreperson submitted a question to the judge to define legal provocation and to clarify the phrase "without fault" as it related to self-defense. Additionally, the jury asked if selling crack cocaine was a felony in South Carolina. The court informed the jury the determination of whether the distribution [3] of crack cocaine is a felony is not a factor to be considered in its decision. As to the definition of legal provocation, the court stated:

> [A] sufficient legal provocation is defined as the existence of facts and/or circumstances relating to an event as would naturally disturb the sway of reason of an ordinary reasonable and prudent person rendering that person's mind incapable of cool reflection and producing what, according to human experience, may be described as an uncontrollable impulse to do violence. So again, a legal provocation is the existence of facts and/or circumstances relating to an event that would naturally disturb the sway of reason of an ordinary reasonable and prudent person rendering that person's mind incapable of a cool reflection and producing

---

**3.** The judge here used the word "distribution." All other references use the word "sale" interchangeably. No issue has been raised as to the use of these terms, nor do we believe it affects our disposition.

what, according to human experience, may be described as an uncontrollable impulse to do violence.

As to the definition of "without fault," the court clarified "that it must be shown that the defendant was without fault in bringing on the immediate difficulty which necessitated the use of deadly force against another that resulted in death or potentially serious bodily harm." The court further elaborated, "[i]n other words, a defendant cannot provoke, initiate or otherwise through his own fault bring about a difficulty that necessitates a response of the use of deadly force and then claim the right of self-defense...."

Once the jury retired again to the jury room, defense counsel asked the court to consider telling the jury that the sale of crack cocaine itself was not the fault element that would preclude self-defense. Based on the jury's questions, he argued that the jurors were assuming the sale of crack cocaine was the fault that might eliminate the applicability of the first prong of self-defense. The court stated the jury was simply asking if selling crack cocaine was a felony in South Carolina and if it desired additional clarification, the jury would request further guidance from the court.

The jury subsequently returned to the courtroom with a written statement from the foreman stating that he and his fellow jurors were having difficulty understanding the phrase "being without fault in bringing on a difficulty" as it related to the defense of self-defense. The court stated, and then repeated: "A person claiming self-defense cannot by his own conduct provoke, initiate or otherwise through his own fault cause someone to attack him and then claim the right of self defense in the use of deadly force in repelling an attack which was caused by his own provocation." The jury retired and defense counsel renewed his objection, asking the court to instruct the jury again based on the first question that the sale of crack cocaine was irrelevant in its deliberations because it appeared the jury was still focused on the same question of fault. The judge stated that the most recently submitted question did not address the issue of crack cocaine or the distribution thereof so he had to assume the jury understood the previous question and declined to issue any further instruction to the jury.

The jury returned to the courtroom an hour later and indicated that a decision had been reached on one of the indictments but not as to the other indictment. The judge instructed the jury to continue to deliberate; thirty minutes later, the jury reached its verdict. On the indictment for murder, the jury found Huckabee guilty of voluntary manslaughter; on the indictment for AWIK, the jury found Huckabee guilty of assault of a high and aggravated nature. The court sentenced Huckabee to incarceration for a term of thirty years for the offense of voluntary manslaughter and incarceration for a term of ten years for the offense of assault of a high and aggravated nature, to be served concurrently, with credit for the amount of time already served. This appeal followed.[4]

## ISSUES ON APPEAL

(1) Did the trial court err in allowing the State's primary witness/victim to testify in reply in violation of the sequestration order?

(2) Did the trial court err in failing to instruct the jury that the distribution of crack cocaine by appellant was irrelevant to the decision?

## STANDARD OF REVIEW

In criminal cases, the appellate court only reviews errors of law and is bound by the trial court's factual findings unless the findings are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The decision whether to waive a sequestration order for witnesses present during the trial rests in the sound discretion of the trial judge." *State v. Saltz*, 346 S.C. 114, 126, 551 S.E.2d 240, 247 (2001). Likewise, the admission of reply testimony is within the sound discretion of the trial court and will only result in reversal if the admission of such testimony is found to be prejudicial. *State v. Farrow*, 332 S.C. 190, 194, 504 S.E.2d 131, 133 (Ct.App.1998). As to jury instructions, "[t]o warrant

---

4. While both the notice of appeal and appellant's brief generically reference the conviction and sentence without specifying whether one or both convictions are being appealed, we have proceeded in an abundance of caution on both the voluntary manslaughter and assault of a high and aggravated nature convictions.

reversal, a trial court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Gaines*, 380 S.C. 23, 31, 667 S.E.2d 728, 732 (2008). Jury instructions must also be considered as a whole, and if the instructions are free from any error, isolated portions which might be misleading will not constitute reversible error. *State v. Sims*, 304 S.C. 409, 422, 405 S.E.2d 377, 384 (1991).

## ANALYSIS

Huckabee argues he was prejudiced by the reply testimony of Tavenier because her testimony cast doubt upon his self-defense theory. He claims the State called Tavenier in reply for the purpose of shaping her testimony to counteract the testimony of Huckabee. We disagree.

"The purpose of the exclusion rule is, of course, to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial; and if a witness violates the order he may be disciplined by the court. The question of the exclusion of the testimony of the offending witness, however, depends upon the particular circumstances and lies within the sound discretion of the trial court." *U.S. v. Leggett*, 326 F.2d 613, 613–14 (4th Cir.1964). A circuit court may order the sequestration of any witness by order or by motion of a party. Rule 615, SCRE. However, a party is not entitled to have witnesses sequestered as a matter of right;[5] instead, the decision to sequester a witness is within the sound discretion of the circuit court. *State v. Simmons*, 384 S.C. 145, 173, 682 S.E.2d 19, 33–34 (Ct.App.2009).

This court dealt with a similar issue in *State v. Fulton*, 333 S.C. 359, 509 S.E.2d 819 (Ct.App.1998), wherein the appellant argued that the trial judge erred in allowing testimony from two of the State's witnesses called on reply when both had remained in the courtroom after their initial testimony and

---

**5.** Moreover, we note the rights of victims under article I, section 24 of the South Carolina Constitution, known as the Victim's Bill of Rights, as well as section 16–3–1550(B) of the South Carolina Code. By this statute, a person must not be sequestered from a proceeding adjudicating an offense of which he was a victim. S.C.Code Ann. § 16–3–1550(B) (2003). However, this issue was not raised to or addressed by the trial court and is not before us as there was no objection to the sequestration order.

both had been subject to a sequestration order. *Fulton*, 333 S.C. at 375, 509 S.E.2d at 827. Citing the rule that the decision to sequester a witness is left to the sound discretion of the trial judge and that such discretion extends to the State's right to recall a witness in reply who was present in the courtroom during a portion of the trial, the court affirmed the trial court's ruling. *Id.* The court simply stated, "[a]fter a review of the record, we find no abuse of discretion by the trial judge in allowing the State to present the reply testimony." *Id.*[6]

More recently, in *State v. Simmons*, 384 S.C. 145, 682 S.E.2d 19 (Ct.App.2009), this court found no abuse of discretion by the trial court in allowing a witness subject to a sequestration order to testify after being in the courtroom during another witness's testimony. *Simmons*, 384 S.C. at 173–74, 682 S.E.2d at 34. In so holding, the court explained that there was no evidence presented to establish that the witness "knowingly and intentionally entered the courtroom in an effort to violate the order." *Id.* at 173, 682 S.E.2d at 34. Further, the witness was only present for a small portion of the other witness's testimony which did not pertain to his own testimony. *Id.* at 174, 682 S.E.2d at 34. Additionally, the witness testified that he entered the courtroom because he had been "sent for" as he was the next witness to testify. *Id.* Finally, the court found the witness's testimony reflected his notes from interrogating the defendant and the defendant did not attempt to show any inconsistencies between the witness's notes and his testimony as a result of being present during the other witness's testimony. *Id.*

 Reply testimony should be limited to rebuttal of matters raised by the defense, rather than to complete the plaintiff's case-in-chief. *Farrow*, 332 S.C. at 194, 504 S.E.2d at 133. "Nevertheless, the improper admission of this evidence may not serve as the basis for reversal unless found to be prejudicial." *Id.* This court has held that a witness previously placed under a sequestration order may testify on reply.

---

**6.** Appellant fails to mention *Fulton* in his brief and only relies on a case from the United States Court of Appeals for the Ninth Circuit for his argument that a sequestration order applies to the exclusion of witnesses who have testified in the case-in-chief but may also be called as reply witnesses.

*Fulton,* 333 S.C. at 375, 509 S.E.2d at 827 (finding no abuse of discretion by the trial judge in allowing reply testimony from two previously sequestered witnesses who had remained in the courtroom following their initial testimony); *see also Gattison v. S.C. State College,* 318 S.C. 148, 151, 456 S.E.2d 414, 415 (Ct.App.1995) (finding no abuse of discretion in allowing unsequestered witnesses to testify on reply given the limited nature of their testimony).

Here, the trial court did not abuse its discretion by allowing Tavenier to testify in reply. On reply, Tavenier was asked only three questions: (1) did she own a purse; (2) did she own a pocketbook; and (3) had she ever owned a purse, pocketbook, or a shoulder strap of any kind. Tavenier's testimony was limited in scope to merely contradict the contention raised by Huckabee that Tavenier pulled a gun out of her purse. It was not admitted to complete the State's case-in-chief. Furthermore, an abuse of discretion does not occur solely because the reply testimony is contradictory to the previously presented testimony. *State v. Todd,* 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986) ("The admission of reply testimony is within the sound discretion of the trial judge, and there is no abuse of discretion if the testimony is arguably contradictory of and in reply to earlier testimony."); *State v. South,* 285 S.C. 529, 535, 331 S.E.2d 775, 779 (1985) ("Any arguably contradictory testimony is proper on reply, and the trial judge properly exercised his discretion."); *State v. Stewart,* 283 S.C. 104, 106, 320 S.E.2d 447, 449 (1984) ("The admission of testimony which is arguably contradictory of and in reply to earlier testimony does not constitute an abuse of discretion."). Thus, based upon prior precedent in South Carolina allowing a sequestered witness to testify on reply where that witness was present in the courtroom during other testimony, and based upon the content of Tavenier's reply testimony, the trial court did not abuse its discretion in allowing Tavenier's reply testimony.

Next, Huckabee argues that he was prejudiced by the judge's refusal to instruct the jurors not to consider the sale of crack cocaine in their deliberations. Huckabee claims the jury's questions indicated confusion and that the original instructions were not sufficiently clear prior to deliberations.

244

We find no error in the judge's refusal of counsel's requested charge.

In response to the jury's question regarding whether the sale of crack cocaine is a felony, the circuit court did not err in responding that the issue of whether the distribution of crack cocaine is a felony is not a factor to be considered by the jury in its deliberations. In addition, the court also correctly declined defense counsel's subsequent request to charge the jury that the sale of crack cocaine in and of itself was not the fault which would eliminate the possibility of self-defense. "Judges shall not charge juries in respect to matters of fact, but shall declare the law." S.C. Const. art. V, § 21 (2009). When reviewing a jury charge for alleged error, the charge must be considered as a whole in light of the evidence and issues presented at trial. *Daves v. Cleary,* 355 S.C. 216, 224, 584 S.E.2d 423, 427 (Ct.App.2003). If the jury charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error and the charge is considered correct if it contains the correct definition and adequately charges the law. *Id.* "The test for the sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean." *State v. Benjamin,* 345 S.C. 470, 474, 549 S.E.2d 258, 260 (2001).

Moreover, "[n]o instruction should be given which tenders an issue which is not presented or supported by the evidence ... [as] even a slight remark, apparently innocent in its language, may, when uttered by the court, have a decided weight in shaping the opinion of the jury." *State v. Mollison,* 319 S.C. 41, 48, 459 S.E.2d 88, 93 (Ct.App.1995) (internal citation and quotation omitted). Thus, the trial judge should narrowly tailor his response to the specific jury question asked. *State v. Smith,* 304 S.C. 129, 132, 403 S.E.2d 162, 164 (Ct.App.1991) ("Quite often, the judge must tailor, mold and even sculpt the law in fashioning an answer to *fit the question.*") (emphasis added). Here, the judge directly answered the specific question that was first asked by the jury: whether selling crack cocaine is a felony in South Carolina. The jury's second question failed to mention the issue of crack cocaine, and thus, the judge's response and refusal to charge the jury on the sale of crack cocaine as it relates to the fault element of

self-defense was adequate to specifically answer the second question. Accordingly, we find no error in the judge's refusal to give the requested charge; alternatively, we find no prejudice as to the instructions given.

## CONCLUSION

Based on the foregoing, the trial court's decision is

**AFFIRMED.**

FEW, C.J., and THOMAS, J., concur.