716 S.E.2d 332

**The STATE, Respondent,**

**v.**

**Eugene J. SINGLETON, Appellant.**

**No. 4886.**

Court of Appeals of South Carolina.

Submitted June 1, 2011.
Decided Sept. 7, 2011.

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General

Salley W. Elliott, and Assistant Attorney General Deborah Shupe, all of Columbia, for Respondent.

GEATHERS, J.

Appellant Eugene Singleton was indicted in Bamberg County for first degree burglary, armed robbery, kidnapping, possession of a weapon during the commission of a violent crime, and criminal conspiracy. After a trial, a jury convicted Singleton of first degree burglary and criminal conspiracy. Singleton appeals, arguing the circuit court erred in allowing (1) the victim to identify Singleton in court when her out-of-court identification was arguably unreliable and created a substantial likelihood of misidentification and (2) the State to call a reply witness who did not comply with the sequestration order imposed by the circuit court at Singleton's request. We affirm.[1]

## FACTS/PROCEDURAL HISTORY

On the night of September 7, 2007, Mattie Singletary (Victim) and her one-year-old daughter were sleeping in her bedroom when she heard a "thump." Moments later, a man walked into her bedroom, uttered an expletive, and ran out. Two other men then entered her bedroom and began threatening her with guns pointed in her and her daughter's direction. The two men ransacked the room and stole a cell phone, two pairs of shoes, jewelry,[2] and more than one thousand dollars in cash.[3] After the men left, Victim noticed her front door had been kicked in.

During trial, Victim identified Singleton[4] as the first man who entered her bedroom. Prior to this in-court identifica-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. According to Victim, the shoes and jewelry that were stolen from her home belonged to Eugene Folk, her boyfriend and the father of her daughter.

3. Victim testified on cross-examination that the $1,020 in cash that was stolen from her home came from a student loan refund.

4. Eugene Singleton is also referred to throughout the record as "Jay" Singleton.

tion, Singleton's counsel had moved to suppress Victim's identification of Singleton on the basis of inconsistencies between Victim's written and oral statements. Specifically, Victim initially stated she did not recognize any of the perpetrators but later recalled that she recognized the first man who entered her room as "Jay." Singleton's counsel argued Victim's identification was the product of her hearing of Singleton's arrest by law enforcement after the fact. The circuit court agreed that there were inconsistencies between Victim's statements but ruled that any inconsistencies would go to her credibility and not to admissibility. The circuit court concluded the identification was sufficiently reliable to submit the issue to the jury because it was based on her own personal knowledge. Therefore, the circuit court denied the motion to suppress Victim's in-court identification of Singleton.

Victim testified she recognized Singleton "[b]ecause he used to be around my baby['s] father . . . [b]ut then after a while, I guess they drifted apart." Victim also noted she had seen Singleton several times on the campus of Denmark Technical College, where she attended school, and when she saw him he would greet her. Victim stated she had seen Singleton nine or ten times prior to September 7, 2007, and she got a good look at him the night of the robbery.

After the robbery, Victim called 911, but she did not mention that she recognized one of the perpetrators. Victim allegedly told one of the responding officers that she recognized one of the robbers as "Jay," but she admitted her written statement did not mention this fact. Victim's initial written statement said "a boy came in the room and said, [oh] sh[*]t, and turn[ed] around." Victim explained that her written statement given the day after the robbery did not mention she recognized Singleton because "it was just so much going on, and I was scared." Singleton's trial counsel cross-examined Victim extensively regarding the absence of this information in her initial written statement.

Two other perpetrators involved in the robbery, Lonnie Rowe and Eugene Hosey, testified at trial on the State's behalf and identified Singleton as a participant in the robbery. Both Rowe and Hosey testified Singleton joined them in planning to go rob a drug dealer and steal drugs from his

mobile home. Rowe testified Singleton kicked in the front door and entered the mobile home first. Rowe said Singleton repeatedly asked Victim where her "stuff" was, and after she told them, Singleton went and got a white bag allegedly containing drugs out of the washing machine.

Rowe further testified he grabbed one or two pairs of sneakers and a cell phone before leaving the mobile home. Rowe claimed he did not know exactly what was in the white bag, and the State did not admit any drug evidence during the course of the trial. Rowe spent the night in the woods and was apprehended by the police the next morning. He confessed to his involvement in the crime and directed the police to Latrell Tyler's home, where Rowe knew Singleton would be staying.[5] Police proceeded to the address Rowe gave them and arrested Singleton.

In April 2008, Victim gave another statement to a Solicitor's Office investigator. In that statement, Victim stated she saw a black male whom she knew as "J" come into her bedroom with a handgun. "J" said "oh sh[*]t" and then ran from the room. Victim said she was not sure why she did not initially tell the police that "J" Singleton was one of the people who entered her home. Victim claimed that "J" probably ran from the room when he saw her because she and "J" knew each other. Victim said she did not see any drugs in the mobile home that night, but she admitted that she had heard her live-in boyfriend, Folk, sold drugs.

With respect to the jewelry stolen from her home, Victim's handwritten statement noted the robbers took a gold chain, a gold watch, and two gold rings. Victim claimed that all the jewelry found on Singleton when he was arrested belonged to Folk. Singleton's counsel cross-examined Victim regarding the fact that the jewelry found in Singleton's possession upon his arrest consisted of two gold bracelets, a watch, a ring, and did not include any gold chains.

In his case-in-chief, Singleton presented evidence that the jewelry found in his possession at the time of his arrest actually belonged to him and not to Folk. Specifically, Tyler,

---

5. Tyler was Singleton's girlfriend.

Tanora Clemons, and Dorothy May Singleton [6] described the jewelry in detail, and all three witnesses testified they had seen Singleton wearing the jewelry prior to September 7, 2007. Tyler noted:

> I remember the bracelet because I asked him could I wear the bracelet. He told me no, he wouldn't let me wear the bracelet. It got the real pretty Jesus on it and I liked it. It had the diamonds on it. I asked could I get it. He told me no. I did want this too, but he told me no.

The State sought to call a reply witness, Harriet Washington, Folk's mother, to testify that the jewelry in fact belonged to her son. During a bench conference off the record, Singleton objected to Washington's testimony on the grounds that Washington was not sequestered during the trial, and was in the courtroom when the other witnesses discussed the jewelry. The circuit court overruled Singleton's motion to suppress the testimony but limited any prejudice by requiring Washington to verbally describe the jewelry prior to the State showing it to her.

During her direct testimony, Washington described the jewelry and identified it as belonging to her son, Folk. Washington testified:

> He got the Lord's piece, a big chain with the Lord face on it. And then he got another big gold chain like a, uh, it's something like some kind of like a head something, but then he got one with a Jesus in it with the diamonds on it and then he had, he got a gold bracelet with Jesus head because I had asked him for it ... he got his gold watch. He got several rings.

During cross-examination, Singleton's counsel questioned Washington extensively regarding her presence in the courtroom when the jewelry was displayed earlier that same day. Washington admitted she had last seen the jewelry that same morning when Singleton's counsel displayed it for three witnesses.

The jury convicted Singleton of first degree burglary and criminal conspiracy. The circuit court sentenced Singleton to

---

6. Clemons is the mother of Singleton's child, and Dorothy May Singleton is Singleton's mother.

thirty-five years' imprisonment for first degree burglary, suspended upon the service of twenty-five years plus five years' probation. The circuit court also sentenced Singleton to five years' imprisonment for conspiracy, to run concurrently with the burglary sentence. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in allowing the victim to identify Singleton in court when her out-of-court identification was arguably unreliable and created a substantial likelihood of irreparable misidentification?

2. Did the circuit court err in allowing the State to call a witness for reply testimony when the witness did not comply with the sequestration order imposed at Singleton's request such that his right to due process was violated?

## LAW/ANALYSIS

### I.  In–Court Identification of Defendant

Singleton argues the circuit court erred in allowing Victim to identify him during her in-court testimony when her out-of-court identification was unreliable and created a substantial likelihood of misidentification. We disagree.

"The admission of evidence is within the sound discretion of the circuit court." *State v. Simmons*, 384 S.C. 145, 166, 682 S.E.2d 19, 30 (Ct.App.2009). "Accordingly, a circuit court's decision to allow the in-court identification of an accused will not be reversed absent an abuse of discretion or prejudicial legal error." *Id.* "To warrant reversal based on the admission or exclusion of evidence, the appellant must prove both the error of the ruling and the resulting prejudice, i.e., that there is a reasonable probability the jury's verdict was influenced by the challenged evidence or the lack thereof." *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 26, 609 S.E.2d 506, 509 (2005).

"An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." *Simmons*, 384 S.C. at 166, 682 S.E.2d at 30 (internal quotation

marks and citation omitted). "The United States Supreme Court has developed a two-prong[ed] inquiry to determine the admissibility of an out-of-court identification." *State v. Moore,* 343 S.C. 282, 287, 540 S.E.2d 445, 447 (2000) (citing *Neil v. Biggers,* 409 U.S. 188, 198–99, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). First, a court must ascertain whether the identification process was unduly suggestive. *Id.* Next, the court must decide whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Id.*

■ "The inquiry must focus upon whether, under the totality of the circumstances, there was a substantial likelihood of irreparable misidentification." *State v. Turner,* 373 S.C. 121, 127, 644 S.E.2d 693, 696 (2007). When determining the likelihood of misidentification, courts must evaluate the totality of the circumstances using the following factors:

> (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Id.* at 127, 644 S.E.2d at 697.

During trial, Victim testified she recognized Singleton because he was formerly friends with Folk. Victim recalled that Singleton had greeted her on the Denmark Technical College campus several times in the past. Furthermore, she got a good look at Singleton on the night of the robbery. Victim explained her written statement did not mention she recognized Singleton because she was scared. Because Victim had prior personal knowledge of Singleton, we conclude the identification process was not unduly suggestive. In addition, based on the totality of the circumstances, we find there was no substantial likelihood of irreparable misidentification such that the identification was unreliable as a matter of law.

■ Regardless, any error was harmless in light of the overwhelming evidence of guilt presented at trial. *See State v. Sims,* 387 S.C. 557, 566–68, 694 S.E.2d 9, 14–15 (2010) (finding error in admission of hearsay statement harmless in view of the overwhelming evidence of guilt presented at trial);

*Fields,* 363 S.C. at 26, 609 S.E.2d at 509 (noting that to warrant reversal based on the admission of evidence, an appellant must demonstrate both error and prejudice). Specifically, two co-conspirators testified against Singleton and identified him as a participant in the robbery.

Accordingly, we affirm the circuit court's decision to admit Victim's in-court identification of Singleton because the identification process was not unduly suggestive, there was no substantial likelihood of irreparable misidentification, and there was no resulting prejudice.

## II. Motion to Suppress Unsequestered Witness's Testimony

■ Singleton argues the circuit court's decision to allow an unsequestered witness to testify deprived him of fundamental fairness and violated his right to due process of law. Specifically, Singleton contends it was prejudicial error to allow Harriet Washington, Folk's mother, to provide rebuttal testimony regarding ownership of the jewelry found on Singleton at the time of his arrest. During trial, Singleton's counsel objected to the reply testimony by Washington because she was sitting in the courtroom when other witnesses described and identified all four pieces of jewelry.

■ "A denial of due process occurs when a defendant in a criminal trial is denied the fundamental fairness essential to the concept of justice." *State v. Hornsby,* 326 S.C. 121, 129, 484 S.E.2d 869, 873 (1997). "At the request of a party the court *may* order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Rule 615, SCRE (emphasis added). However, "[a] party is not entitled to the sequestration of witnesses as a matter of right." *State v. Fulton,* 333 S.C. 359, 375, 509 S.E.2d 819, 827 (Ct.App.1998). "Rather, the decision to sequester witnesses is left to the sound discretion of the trial judge." *Id.* "This discretion extends to the State's right to recall a witness in reply who was present in the courtroom during a portion of the trial." *Id.*

■ "Whether a witness should be exempted from a sequestration order is within the trial court's discretion." *State v. Tisdale,* 338 S.C. 607, 616, 527 S.E.2d 389, 394

(Ct.App.2000) (declining to grant a mistrial based on violation of a sequestration order by the State's witness); *see also Fulton*, 333 S.C. at 375, 509 S.E.2d at 827 (finding no abuse of discretion by the trial judge in allowing reply testimony from two previously sequestered witnesses who had remained in the courtroom following their initial testimony). Moreover, "[t]he admission of reply testimony is within the sound discretion of the trial judge, and there is no abuse of discretion if the testimony is arguably contradictory of and in reply to earlier testimony." *State v. Todd*, 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986); *see also State v. Huckabee*, 388 S.C. 232, 243, 694 S.E.2d 781, 786 (Ct.App.2010) (finding no abuse of discretion by the trial judge in allowing reply testimony when it was limited in scope to contradict a previous contention raised by the defendant and not admitted to complete the State's case-in-chief).

We conclude Singleton's right to due process of law was not violated by the admission of this reply testimony. First, Singleton was not entitled to a sequestration order as a matter of right. *See Fulton*, 333 S.C. at 375, 509 S.E.2d at 827 ("A party is not entitled to the sequestration of witnesses as a matter of right."). Furthermore, the circuit court did not abuse its discretion in allowing Washington to testify regarding her belief that Folk owned the jewelry found in Singleton's possession at the time of his arrest. Washington's testimony was in direct response to three witnesses who testified Singleton owned the same jewelry. The reply testimony was limited in scope and not admitted to complete the State's case-in-chief. *See Huckabee*, 388 S.C. at 243, 694 S.E.2d at 786. Finally, Singleton's counsel cross-examined Washington extensively regarding her presence in the courtroom when the jewelry was displayed earlier that day. Therefore, any possible prejudicial effect was limited by Singleton's counsel repeatedly questioning Washington regarding the source of her knowledge of the jewelry.

## CONCLUSION

We affirm the circuit court's decision to admit Victim's in-court identification of Singleton because the identification process was not unduly suggestive, the identification was reliable based on the totality of the circumstances, and there

was no resulting prejudice. We also affirm the circuit court's decision to allow the State to call a previously unsequestered witness to give reply testimony because the admission of Washington's testimony did not deprive Singleton of either fundamental fairness or due process of law. The testimony was offered by the State in reply to directly contradictory testimony by Singleton's witnesses. Furthermore, Singleton's counsel cross-examined Washington extensively regarding her presence in the courtroom during the other witnesses' testimony.

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.