WILLIAMS, J., dissenting.
WILLIAMS, J.:
I respectfully dissent and I would affirm the circuit court.
I. Reply Testimony
In my view, the circuit court did not abuse its discretion when it admitted the State's reply testimony. Accordingly, I would affirm the circuit court as to this issue.
Reply testimony is inadmissible to complete the plaintiff's case-in-chief and should be limited to rebutting matters the defense raised. State v. Huckabee , 388 S.C. 232, 242, 694 S.E.2d 781, 786 (Ct. App. 2010). "The admission of reply testimony is a matter within the sound discretion of the [circuit court]." State v. Stewart , 283 S.C. 104, 106, 320 S.E.2d 447, 449 (1984). However, "an abuse of discretion does not occur solely because the reply testimony is contradictory to the previously presented testimony." Huckabee , 388 S.C. at 243, 694 S.E.2d at 786.
At trial, Prather testified to being outside Victim's residence when the purported "staging and undoing" occurred. Moreover, Prather claimed he did not participate in any of these acts and testified Phillips was inside the residence when these acts occurred. When examining his claims in the context of his entire testimony, Prather inferred that only one person committed **111 these acts.[6] Conversely, the State's reply testimony contradicted Prather's notion that only one person *427 participated in these acts. Importantly, the testimony was in response to Prather's testimony and was introduced to counter Prather's testimony-even though it did not directly implicate Prather. Specifically, LaRosa's testimony indicated two individuals were at the crime scene based on the types of personalities involved in "staging" and "undoing."[7] Accordingly, I do not **112 find that the circuit court abused its discretion in allowing LaRosa's testimony on reply. See State v. Todd , 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986) ("The admission of reply testimony is within the sound discretion of the trial judge, and there is no abuse of discretion if the testimony is arguably contradictory of and in reply to earlier testimony.").
Additionally, I disagree with Prather's remaining arguments on the admission of the reply testimony, and accordingly, would affirm the circuit court based on the lack of prejudice to Prather. "[T]he improper admission of [reply testimony] may not serve as the basis for reversal unless found to be prejudicial." State v. Farrow , 332 S.C. 190, 194, 504 S.E.2d 131, 133 (Ct. App. 1998) (per curiam).
In the instant case, I do not believe LaRosa's reply testimony prejudiced Prather. LaRosa's testimony was general in nature and only sought to establish the presence of two people at the crime scene, rather than to establish Prather as the sole perpetrator. Moreover, LaRosa's testimony regarding the personality traits of those involved in the crime was offered to show the differing and distinct personalities that would engage in staging and undoing, which ultimately supported his conclusion that two people participated in the crime scene. LaRosa made no mention of Prather's name or any of Prather's personality traits during his reply testimony. Indeed, LaRosa did not offer his testimony as evidence of Prather's involvement in the crime; rather, LaRosa discussed the distinct **113 personality traits to demonstrate that two individuals necessarily participated.
Last, regardless of whether the reply testimony was proper, I would find the circuit court's admission of reply testimony to be harmless error. See State v. McClellan , 283 S.C. 389, 393, 323 S.E.2d 772, 774 (1984) ("However, [when] guilt is proven by competent evidence and no rational conclusion can be reached other than the accused's guilt, a conviction will not be set aside because of insubstantial errors not affecting the result."). Prather's admission to striking Victim; other witnesses' testimony that Prather claimed: to have struck Victim with "devastating blows," to have left Victim barely alive, and that he needed to wash the blood off of his hands; and the pathologist's testimony that Victim's death was caused by an irregular heartbeat that resulted from the stress of a beating and an enlarged heart provide competent evidence to establish Prather's guilt in this case. Moreover, I respectfully disagree with the majority's view that the additional evidence of LaRosa's testimony affected the outcome of this trial; particularly to their point that LaRosa's testimony left the jury *428 with only the conclusion that Prather was the second offender. See State v. Black , 400 S.C. 10, 30, 732 S.E.2d 880, 891 (2012) (determining the error to be harmless after a review of the entire record and finding the admission of additional evidence against the defendant "could not reasonably have affected the jury's result in this case"). In the instant case, prior to LaRosa's testimony, evidence that stolen items were found in Prather's vehicle and on Phillips; that blood was found on Prather's sock and on the back of his shirt; and that a knife was found in Prather's car indicated Prather and Phillips were involved in Victim's murder and supported the State's theory of the case. Accordingly, any error resulting from the State's reply would be harmless.
In conclusion, I would affirm the circuit court's admission of the reply testimony because it was properly admitted. Furthermore, I do not believe Prather established he sustained any prejudice. Last, I would affirm the circuit court because any error Prather may have established by the admission of the reply testimony would be harmless.
II. Remaining Issues
In addition to Prather's argument regarding reply testimony, he also argues that: (1) LaRosa's testimony was not **114 properly produced during discovery; (2) the State committed prosecutorial misconduct when it "sandbagged" the defense with LaRosa's testimony; (3) the introduction of a portion of Prather's codefendant's statement to the police was inadmissible hearsay, unreliable, irrelevant, and violated Prather's Confrontation Clause rights; (4) the circuit court improperly denied Prather's motion for a directed verdict; (5) the State denied Prather's right to due process when it pursued factually inconsistent theories in Prather's and his codefendant's cases; (6) the circuit court denied Prather due process when it did not allow him to introduce a statement from an unavailable witness; and (7) the circuit court violated Prather's Fourth Amendment rights when it did not suppress evidence produced as a result of a fatally defective warrant.[8] I would affirm the circuit court as to Prather's remaining issues on appeal.
1. Regarding Prather's arguments that LaRosa's testimony was not properly produced during discovery and the State committed prosecutorial misconduct when it "sandbagged" the defense with LaRosa's testimony, I would find these issues unpreserved. Prather did not raise these issues during the in camera hearing or at trial; instead, Prather first raised these arguments in his motion for a new trial. See **115 State v. Dunbar , 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the [circuit court]. Issues not raised and ruled upon in the [circuit] court will not be considered on appeal."); see also State v. King , 334 S.C. 504, 510, 514 S.E.2d 578, 581 (1999) (finding that a party cannot raise an evidentiary issue for the first time in a new trial motion). Thus, I would affirm the circuit court as to these two issues.
2. Similarly, I would find the circuit court did not abuse its discretion by allowing the State to introduce a portion of the statement of Prather's co-defendant-Phillips-to the police, in which Phillips misspelled rapist.[9] As to whether the statement was inadmissible hearsay under the South Carolina Rules of Evidence; unreliable; and irrelevant, I would find this argument unpreserved. See Dunbar , 356 S.C. at 142, 587 S.E.2d at 693-94 ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the [circuit court]. Issues not raised and ruled upon in the [circuit] court will not be considered on appeal."); Wilder Corp. v. Wilke , 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n objection must be sufficiently specific to inform the trial court of the point being urged by the objector."). Prather did not object to the statement's admissibility on these grounds or as hearsay during the in camera hearing or contemporaneously during trial. Rather, Prather specifically raised an objection to the admissibility of the statement based solely on the exclusion of testimonial evidence under the Confrontation *429 Clause. Thus, I believe Prather's assertion that portions of Phillips' statement are inadmissible, unreliable, and irrelevant is unpreserved.
Regarding Prather's Confrontational Clause argument, I would find the circuit court did not abuse its discretion because the State only introduced two words from a six page document and redacted every other remaining word. The admission of a redacted statement does not violate the Confrontation Clause when the statement does not incriminate the defendant on its face, even though "its incriminating import was certainly inferable from other evidence that was properly admitted against [the defendant]." State v. Evans , 316 S.C. 303, 307, 450 S.E.2d 47, 50 (1994) (citing Richardson v. Marsh , 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) ). Here, Prather's rights were not violated because only the two misspelled words from Phillips' statement to the police were admitted with the remaining six page document being redacted. Furthermore, "rapeist" does not incriminate Prather on its face, even though its incriminating nature was inferable from other admissible evidence, and Prather had the opportunity to cross-examine Officer Jones, who testified to witnessing Phillips spell the word incorrectly. Thus, I would affirm the circuit court on this issue.
3. As to Prather's argument that the circuit court erred in denying his motion for a directed verdict, I would find evidence supports the circuit court's findings. See Sellers v. State , 362 S.C. 182, 188, 607 S.E.2d 82, 85 (2005) ("When ruling on a [defendant's] motion for directed verdict, a [circuit] court is concerned with the existence of evidence, not its weight.");
**116 State v. Gaster , 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002) (finding the appellate court may only reverse the circuit court if no evidence supports the circuit court's ruling); State v. Zeigler , 364 S.C. 94, 102, 610 S.E.2d 859, 863 (Ct. App. 2005) ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury.").
Specifically, Prather asserts the State failed to prove proximate cause existed between his actions and Victim's death. However, the record demonstrates the circuit court properly denied Prather's motion for a directed verdict because evidence supported submitting this issue to the jury. See State v. Dantonio , 376 S.C. 594, 605, 658 S.E.2d 337, 343 (Ct. App. 2008) ("A defendant's act may be regarded as the proximate cause if it is a contributing cause of the death of the deceased. The defendant's act need not be the sole cause of the death, provided it is a proximate cause actually contributing to the death of the deceased." (citation omitted)). Indeed at trial, witnesses testified Prather admitted to severely beating Victim. Moreover, the pathologist testified the stress of the beating and an enlarged heart caused the death of Victim. Accordingly, I would affirm the circuit court's denial of Prather's motion for a directed verdict.
4. As to whether Prather's rights to due process were denied because the State pursued factually inconsistent theories in Prather's and Phillips' cases, I would find this issue unpreserved. Prather failed to raise this issue to the circuit court at trial or in his post-trial motion. See Dunbar , 356 S.C. at 142, 587 S.E.2d at 693-94 ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the [circuit court]. Issues not raised and ruled upon in the [circuit] court will not be considered on appeal."); State v. Varvil , 338 S.C. 335, 339, 526 S.E.2d 248, 250 (Ct. App. 2000) ("Constitutional arguments are no exception to the rule, and if not raised to the [circuit] court are deemed waived on appeal.").
5. As to whether the circuit court abused its discretion by not allowing Prather to introduce a statement from an unavailable witness, I would affirm the circuit court's ruling because, **117 notwithstanding the statement containing two levels of hearsay, I believe the statement to law enforcement does not fall under the present sense impression or excited utterance exceptions to the rule against hearsay. See Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the [South Carolina Supreme Court] or by statute."); Rule 803(1), SCRE (defining "present *430 sense impression" as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter"); Rule 803(2), SCRE (defining "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"); State v. Hendricks , 408 S.C. 525, 533, 759 S.E.2d 434, 438 (Ct. App. 2014) (finding victim's mother's statement to a 911 operator-in which victim's mother stated victim's boyfriend broke into the house, beat up victim, and raped victim-was inadmissible hearsay not covered by the present sense impression exception because the mother did not perceive the rape contemporaneously while she made the statement); State v. Davis , 371 S.C. 170, 179, 638 S.E.2d 57, 62 (2006) ("[S]tatements which are not based on firsthand information, such as where the declarant was not an actual witness to the event, are not admissible under the excited utterance exception to the hearsay rule.").
In the instant case, Prather attempted to introduce a statement made by Jody Becknell-who was deceased at the time of the trial-to law enforcement regarding a conversation he had with Victim, wherein Victim described his injured ribs to Becknell. Becknell did not perceive Victim's rib pains, did not witness the event causing the pain, and did not have firsthand information about the event when he relayed the information to the police. Therefore, regardless of whether Victim's statements to Becknell would fall under an exception to hearsay, Becknell's statement to the police would not qualify under the excited utterance or present sense impression exceptions to the rule against hearsay. Accordingly, I would affirm the circuit court as to this issue.
6. Finally, as to whether the circuit court violated Prather's Fourth Amendment rights by not suppressing the Coca-Cola glasses and knife found in his car pursuant to a fatally **118 defective warrant, I would find the circuit court did not commit an error because the inevitable discovery doctrine would permit admission of this evidence. See State v. Tindall , 388 S.C. 518, 521, 698 S.E.2d 203, 205 (2010) ("On appeals from a motion to suppress based on Fourth Amendment grounds, [the appellate court] applies a deferential standard of review and will reverse if there is clear error."); State v. Spears , 393 S.C. 466, 482, 713 S.E.2d 324, 332 (Ct. App. 2011) (citing Nix v. Williams , 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) ) (stating that the inevitable discovery doctrine-an exception to the exclusionary rule-allows for the admission of illegally obtained evidence if the prosecution can establish by a preponderance of the evidence that the evidence would inevitably or ultimately have been discovered by lawful means). Upon review of the record, I find the State satisfied its burden under the inevitable discovery doctrine when testimony detailed the police department's policy of impounding a vehicle and the department's policy of conducting a routine, warrantless inventory of an entire vehicle when impounded. Furthermore, the record demonstrates Prather's vehicle remained in the hospital's parking lot after police detained him, and the car would have been impounded. Therefore, I would find the circuit court committed no error in admitting this evidence.

Specifically, Prather stated:
[State]: Now, let's talk about this crime scene. It's your testimony that you're not the one responsible for leaving [Victim] in this condition?
[Prather]: No, I'm not.
[State]: That you didn't beat [Victim] down on that sofa; correct?
[Prather]: That's correct. I didn't.
....
[State]: You didn't pull his pants down and carve on him?
[Prather]: No.
[State]: And you didn't go into the bedroom and take this object out of the bedroom, this sex object, and place it beside [Victim]'s body, did you?
[Prather]: The last time I saw it, it was at Josh's feet in that room. And, no, because I'm not touching that thing.
[State]: You're not responsible for the cigarette burn on [Victim]'s finger; is that your testimony?
....
[Prather]: No, I'm not responsible for the cigarette burn.
[State]: And you're also saying you're not the one who took this blue blanket, this comforter and covered up that body. Is that your testimony?
[Prather]: Yes, sir. I don't recall seeing that blue blanket anywhere in the house.
[State]: And you didn't take this blue pillow and put it over his head?
[Prather]: No.
[State]: And Joshua Phillips was alone in the house for eight to ten minutes?
[Prather]: Somewhere around there.

At trial, LaRosa testified:
[LaRosa]: Undoing is a term that we use in crime analysis where an offender would want to erase, symbolically erase what has happened. In this case, it could be-it's on a spectrum. You could have a lot or you can have a little, where an offender may throw a t-shirt over a victim's face because they can't look at it any more. It's not what they want-they don't want to remember him a certain way. This is a classic case of undoing, which is covering up the victim with a blanket and a pillow. It is symbolically erasing what has occurred in the scene.
[State]: Is staging and undoing show the same emotion [sic]?
[LaRosa]: They are in absolute conflicts with each other. You have this-I don't want to call it elaborate, but I'll call it detailed staging of taking the time to carve the word rapist in the back of the victim and then placing the adult sex toy next to him to show first responders that this guy is a rapist. Hey, look at this. They are yelling. They are expressing this is the way I want this guy to be portrayed, as a rapist. Then you have another personality that goes in and says, I'm not comfortable with that. I'm going to undo it, cover it up. You have two distinct personalities which points us to me and my opinion that you have two offenders within that scene at the same time.
....
[LaRosa]: Yes, yes. Two distinct offenders who at the heat of the moment one of them decides to carve the word rapist and the place an adult sex toy, a dildo next to him, and the other one taking blankets and wanting to erase, to just undo what has just occurred.

The majority did not address these issues because its holding was dispositive.

Phillips spelled the word "rapeist."